[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 21 2000
THOMAS K. KAHN
CLERK

------------------------------------

No. 99-12802

------------------------------------

D.C. Docket No. 98-00045-CR-2-WCO-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHANNA ISABEL CAMACHO,

Defendant-Appellant.

------------------------------------------------------------------

Appeal from the United States District Court
for the Northern District of Georgia

------------------------------------------------------------------

**(November 21, 2000)**

Before EDMONDSON and BIRCH, Circuit Judges, and BLACKBURN\*, District
Judge

------------------------

\* Honorable Sharon Lovelace Blackburn, U.S. District Judge for the Northern District of
Alabama, sitting by designation.

BLACKBURN, District Judge:

Appellant Johanna Isabel Camacho appeals her conviction for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), asserting that the district court violated Rule 11 of the Federal Rules of Criminal Procedure in accepting her guilty plea and entering judgment pursuant thereto. Finding no reversible error, we affirm.

I.

On October 21, 1998, Appellant, along with several co-defendants, was indicted by a grand jury under Count One of the indictment for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and under Count Five of the indictment for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Specifically, Count Five charged:

> On or about July 8, 1997, in the Northern District of Georgia, the defendants,
>
> > Byron Leonel Portillo,
> > Johanna Isabel Camacho,
> > Everaldo Guzman Garcia, and
> > Joel Robles,
>
> aided and abetted by each other and by Wilson Antonio Canas, who is not named in this indictment as a defendant, knowingly and intentionally possessed cocaine hydrochloride, a Schedule II narcotic controlled substance, with the intent to distribute the said controlled substance, in violation of Title 21, United States Code, Section 841(a)(1),

and Title 18, United States Code, Section 2.

(R. Vol. 1, Doc. 1 at. 6-7.)

Although Appellant initially pled not guilty to these charges, on April 12, 1999, Appellant entered into a negotiated plea agreement with the United States, in which she agreed to plead guilty to Count Five of the indictment and to cooperate with the United States. Appellant also agreed to waive her right to appeal the sentence. In exchange, the United States agreed to dismiss Count One of the indictment against Appellant at the time of sentencing. The parties executed a Negotiated Plea and a letter confirming the agreement and setting forth in detail the terms of the agreement. At the conclusion of the letter, Appellant acknowledged by her signature that she "ha[d] read th[e] agreement and carefully reviewed every part of it with [her] attorney," that she understood the agreement, and that she voluntarily agreed to its terms. (R. Vol. 1, Doc. 153 at 7.)

Contained in the letter confirming the plea agreement were several provisions pertinent to this appeal. First, the agreement stated that the maximum statutory sentence was forty years' incarceration, while the mandatory minimum term of incarceration was five years. Additionally, the agreement stated that Appellant was subject to a fine of up to $2 million, a term of supervised release of at least four years, and a mandatory special assessment of $100. With respect to sentencing, the

3

agreement provided that the base level for the offense to which Appellant was pleading guilty was 38; that the Government's position was that Appellant's offense level should be adjusted upward by two levels because of a firearm that was seized at the time of her arrest; that the parties agreed that Appellant's offense level should be reduced by two levels because she played a minor role in the offense of conviction; and that Appellant's offense level should be reduced further by two levels for acceptance of responsibility, provided Appellant continued to manifest acceptance of responsibility. The agreement also stated, however:

> Ms. Camacho understands that in the federal criminal system, sentencing is a matter which is determined by the Court, in accordance with the Sentencing Guidelines . . . and that the sentencing court is not bound by any factual agreement between the parties, or by any recommendation made by the United States.

(*Id.* at 4.) Finally, for purposes of this appeal, the agreement provided:

> Ms. Camacho specifically understands that this agreement is only between herself and the United States Attorney for the Northern District of Georgia. Ms. Camacho understands that the District Court is not a party to this agreement, and nothing herein is intended to bind the District Court to take any action, and the District Court's failure to accept one or more of the recommendations made pursuant to this agreement does not constitute either a breach of this agreement by the government, or grounds for the withdrawal of the plea of guilty.

(*Id.* at 6-7.)

On April 12, 1999, the district court conducted a plea colloquy pursuant to Federal Rule of Criminal Procedure 11, during which it questioned Appellant concerning her guilty plea. The district court also accepted the guilty plea of Appellant's co-defendant, Byron Leonel Portillo, during this hearing.[1] The district court began the hearing by informing Appellant and Mr. Portillo that by pleading guilty they were waiving their right to trial, including their right to present witnesses on their behalf, to cross-examine the Government's witnesses, and to testify. The district court further informed Appellant and Mr. Portillo that if there were no plea agreements the Government would have to prove their guilt as to each charge beyond a reasonable doubt. Concerning the offense to which Appellant was pleading guilty, the district court stated:

> Now, what the Government would have to prove beyond a reasonable doubt as to Ms. Camacho is that on or about July 8 of 1997 you, aided and abetted by others named in the indictment, possessed cocaine hydrochloride. In [sic] was a Schedule II controlled substance. That the possession was with the intent to distribute it, and that you knowingly and intentionally possessed that product. The Government would have to prove each of those things beyond a reasonable doubt before you could be convicted.

(R. Vol. 4 at 3.) Later during the hearing, the district court specifically questioned Appellant concerning the written plea agreement executed by Appellant and

---

[1]Mr. Portillo pled guilty to Counts One, Two, and Nine of the indictment.

5

representatives of the Government. Appellant acknowledged the written agreement, including the letter dated April 12, 1999. Appellant acknowledged that the letter and the official plea agreement document constituted her plea agreement with the United States, that she had reviewed the documents with her attorney, that she understood the terms of the agreement, and that she wished to enter into the agreement with the United States. With respect to the voluntary nature of her plea and her guilt or innocence in the charged offense, the district court asked whether Appellant was "in fact guilty of what [she was] pleading to," to which Appellant responded, "Yes." (*Id.* at 12.)

Also during the course of the April 12 hearing, the district court discussed with Appellant the consequences of her guilty plea. Concerning her potential sentence, the district court overstated the maximum possible term of incarceration. Specifically, the district court stated, "As to you, Ms. Camacho, the maximum punishment is 340 years in prison and a mandatory minimum of five years, $2 million fine, and a term of supervised release of at least four years after any prison term, and a mandatory special assessment of $100." (*Id.* at 12-13.) With respect to any promises contained in the plea agreement concerning sentence, the district court stated, "You understand that the agreement between you and the Government concerning guideline matters are matters between you and the prosecutor, the court is not a party to that; do you understand

6

that?" (*Id.* at 13.) Appellant then responded, "Yes." (*Id.*) Later, when questioning Mr. Portillo concerning his decision to plead guilty, the district court stated, "You understand that any agreements you have with the prosecuting attorney do not bind the court . . . ." (*Id.* at 15.)

Finally, the district court questioned the Government's attorney as to what evidence would support the guilty pleas entered by Appellant and Mr. Portillo. With respect to Appellant, the Government's attorney stated:

> On July–in the period of time leading up to July 8, 1997 an individual working with Drug Enforcement Administration had approached Mr. Wilson Canas for the purpose of acquiring a quantity of cocaine hydrochloride.
>
> Mr. Canas knew Ms. Camacho and knew Ms. Camacho to work for Mr. Portillo. Ms. Camacho agreed to get Mr. Canas a quantity of cocaine hydrochloride. On the evening of the 8th of July, listed in Count 5, Mr. Canas met with Ms. Camacho and Mr. Portillo. Mr. Portillo made a telephone call and Mr. Guzman-Garcia and Mr. Robels [sic] arrived–was out at the Circuit City on Jimmy Carter Boulevard at I-85. Ms. Camacho and Mr. Canas then got into the car and they drove to the Publix parking lot on Peachtree Road. And I believe, your Honor, and it escapes me, but I believe that is around Peachtree Battle.
> They met there with the individual or they were going to meet with the individual who was to make a purchase from Mr. Canas. When they arrived and saw the individual first was Ms. [sic] Andre Cark, the DEA agent who was acting undercover, but had with him a man by the name of Salese, who was known to Mr. Robles to have been arrested. Mr. Robeless [sic], when he saw Mr. Salese, he pulled into a parking space and immediately then backed

7

> out, and then they began approximately a five-mile long slow speed chase where finally at the Brookhaven MARTA station the DEA agents were able to pull the car over. Inside the automobile was one kilogram of cocaine hydrochloride.

(*Id.* at 19-20.) The Government's attorney then informed the district court that the passengers in the car were Appellant, Mr. Canas, Mr. Robles, and Mr. Guzman-Garcia and that under the driver's seat was a loaded firearm. Following this proffer, the district court asked Appellant whether she persisted in her plea of guilty, to which Appellant answered, "Yes." (*Id.* at 23.) The district court concluded the plea colloquy by finding that the guilty pleas were "freely and voluntarily entered and knowingly entered" and that there was "a factual basis to support each of the counts to which the plea [was] entered." (*Id.*) The district court then stated that it would accept the pleas as to both Appellant and Mr. Portillo.

Subsequent to the April 12 hearing and before sentence was imposed on July 30, 1999, Appellant and her trial counsel received a copy of the presentence investigation report and filed no objections thereto. Also prior to the July 30 sentencing hearing, the United States filed a motion, pursuant to United States Sentencing Guidelines § 5K1.1, to authorize the district court to depart downward in imposing sentence as to Appellant. The district court subsequently granted the Government's motion and sentenced Appellant to 145 months' incarceration, which

was below the guideline range contained in the presentence investigation report of 188 to 235 months' incarceration.

Appellant filed a timely notice of appeal.

## II.

On appeal, Appellant asserts for the first time that the district court failed to comply with Federal Rule of Criminal Procedure 11 in accepting her guilty plea. Because Appellant failed to object to any alleged error under Rule 11 before the district court, we review the proceedings below for plain error. *See United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999); *United States v. Quinones*, 97 F.3d 473, 475 (11th Cir. 1996). Under the plain error standard, an error is reversible only if it "is clear or obvious and affects substantial rights." *Id.*; *see also United States v. Olano*, 507 U.S. 725, 732-33, 113 S. Ct. 1770, 1776 (1993) (error not timely raised in district court is forfeited unless the error is plain and affects substantial rights). Plain error review differs from harmless error review in that under plain error review, the defendant bears the burden of persuasion with respect to prejudice. *See United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000).

Although plain error review is an exacting standard, *see United States v. Humphrey*, 164 F.3d 585, 588 (11th Cir. 1999) ("[O]ur power to review for plain

error is 'limited' and 'circumscribed' (quoting *Olano*, 507 U.S. at 732, 113 S. Ct. at 1776)); *United States v. Pielago*, 135 F.3d 703, 708 (11th Cir. 1998) (the plain error rule places a "daunting obstacle" before a criminal defendant), in the context of Rule 11, this Court has previously held that a district court's failure to satisfy any of the core objectives of Rule 11 affects a defendant's substantial rights and, thus, can constitute plain error, *see Hernandez-Fraire*, 208 F.3d at 949; *Quinones*, 97 F.3d at 475; *see also United States v. DePace*, 120 F.3d 233, 236 (11th Cir. 1997) (a district court's failure to address any one of the core concerns under Rule 11 requires automatic reversal).  We have identified three core objectives of Rule 11:  (1) ensuring that the guilty plea is free from coercion; (2) ensuring that the defendant understands the nature of the charges against her; and (3) ensuring that the defendant is aware of the direct consequences of the guilty plea.  *See Mosley*, 173 F.3d at 1322; *United States v. Hourihan*, 936 F.2d 508, 511 n.4 (11th Cir. 1989).  In this appeal, Appellant argues that the district court failed to address the second and third core objectives of Rule 11, requiring the reversal of her conviction.

III.

Appellant first asserts that the district court committed plain error when it failed to adequately ensure that she understood the nature of the charge to which

10

she was pleading guilty, the second core objective of Rule 11. Appellant argues that the district court failed to meet this objective in two ways: first, by providing a confusing explanation of the nature of the charge against her and failing to obtain her assurance that she understood the nature of the charge; and second, by failing to ensure that there was an adequate factual basis for the charge to which she was pleading guilty. We disagree.

A.

Under Rule 11(c)(1), before accepting a guilty plea, the court must address the defendant personally in open court and inform the defendant of "the nature of the charge to which the plea is offered." Fed. R. Crim. P. 11(c)(1). In assessing whether the district court adequately informed a criminal defendant of the nature of the charge against her, this Court has emphasized that no "simple or mechanical rule" may be applied and that the level of inquiry required to satisfy Rule 11(c)(1) "varies from case to case depending on 'the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence.'" *DePace*, 120 F.3d at 237 (quoting *United States v. Bell*, 776 F.2d 965, 968 (11th Cir. 1985)); *see also United States v. Wiggins*, 131 F.3d 1440, 1443 (11th Cir. 1997) ("[T]he Rule 11(c) colloquy may be done in different ways depending on various factors."). For simple charges, for example, "'a reading of the indictment, followed by an

11

opportunity given the defendant to ask questions about it, will usually suffice.'"

*DePace*, 120 F.3d at 237 (quoting *United States v. Dayton*, 604 F.2d 931, 938 (5th Cir. 1979)).  On the other hand, more complex charges may require more explanation, including in some cases an explanation of the elements of the offense similar to that given the jury in its instructions.  *See DePace*, 120 F.3d at 237.  We must assess, then, on "a case-by-case basis whether the district court adequately ensured that a defendant understood the nature of the charge."  *United States v. James*, 210 F.3d 1342, 1344 (11th Cir. 2000); *see also Mosley*, 173 F.3d at 1324 ("To decide whether a defendant understands the nature of the charges to which [s]he is pleading, 'we must . . . affirm the district court if the record provides a basis for the court's finding that the defendant understood what [s]he was admitting and that what [s]he was admitting constituted the crime charged.'" (quoting *United States v. Lopez*, 907 F.2d 1096, 1099 (11th Cir. 1990)).

In this case, Appellant first argues that the district court failed adequately to ensure that she understood the nature of the charge to which she was pleading guilty because its explanation of the charge against her differed materially from the charge as stated in Count Five of the indictment.  Specifically, Appellant argues that the district court's explanation of the charge implied that she had to have possessed the cocaine with intent to distribute, while the charge in the indictment

12

did not specify which of the four defendants possessed the cocaine and which of the others merely aided and abetted the possession. According to Appellant, the district court's failure to explain the aiding and abetting theory on which the charge in the indictment was apparently based was reversible error because Appellant could not have known whether she was being charged with actual or constructive possession of cocaine with intent to distribute or aiding and abetting such possession. Appellant also notes that the district court never directly asked Appellant whether she understood the nature of the charges.

The district court did not commit reversible error in its explanation of the nature of the charge to which Appellant was pleading guilty or in its implicit finding that, in fact, Appellant understood the nature of the charges against her. As we noted in *DePace*, "the aiding and abetting theory is not an essential element of the [underlying] offense." *DePace*, 120 F.3d at 236 n.3. Rather, it is merely a theory upon which criminal liability may be based. In addition, contrary to Appellant's suggestion, the district court's explanation of the charge was consistent with the charge contained in Count Five of the indictment. Specifically, the indictment in this case did not rely exclusively on the aiding and abetting theory. Rather, the indictment charged that each defendant, "aided and abetted by each other[,]" knowingly and intentionally possessed cocaine hydrochloride with the

13

intent to distribute it. (R. Vol. 1, Doc. 1 at 6-7.) Thus, Count Five actually charged Appellant with possession of cocaine with intent to distribute, as well as with aiding and abetting the other defendants in their unlawful possession with intent to distribute.

The district court likewise explained to Appellant that she was charged with possession of cocaine with intent to distribute. Specifically, the district court explained to Appellant that in order to be convicted of the offense to which she was pleading guilty–possession of cocaine hydrochloride with intent to distribute–the Government would have to prove that she possessed cocaine hydrochloride, that it was a Schedule II controlled substance, that the possession was knowing and intentional, and that the possession was with the intent to distribute it. Thus, the charge as explained by the district court was not materially different from that contained in the indictment and should have engendered no confusion.

We note further that the plea agreement recited that Appellant was charged with "possession of cocaine hydrochloride with the intent to distribute it," (R. Vol. 1, Doc. 153 at 1), and that Appellant affirmed both by her signature at the end of the agreement and her verbal affirmation before the district court that she had reviewed the agreement with her attorney, that she understood its contents, and that

14

she voluntarily agreed to its terms. Thus, Appellant was informed in at least three ways that she was charged with possession of cocaine hydrochloride with intent to distribute, and not one of the sources implied a reliance by the Government on an aiding and abetting theory. While the Government may, in fact, have planned to introduce evidence to support a conviction under the aiding and abetting theory of criminal liability, the aiding and abetting theory of criminal liability was not an essential element of the offense and the district court's explanation of the offense was consonant with the charge as recited in both the indictment and the plea agreement.

Finally, while the district court did not explicitly ask Appellant whether she understood the nature of the charge against her, it did ask Appellant whether she was "in fact guilty of what [she was] pleading to," to which she replied, "Yes." (R. Vol. 4 at 3.) Appellant, who was represented by counsel, never voiced any confusion about the charge to which she was pleading, nor did she object to the district court's handling of the Rule 11 inquiry. Considering all of the circumstances in this case, then, we conclude that "the record provides a basis for the [district] court's finding that the defendant understood what [s]he was admitting and that what [s]he was admitting constituted the crime [of possession of cocaine with intent to distribute]." *Lopez*, 907 F.2d at 1099.

Our conclusion is buttressed by this Court's decision in *DePace*. In *DePace*, two brothers were convicted after pleading guilty to using and carrying a handgun during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2, notwithstanding the fact that neither brother actually possessed the handguns at issue. *See DePace*, 120 F.3d at 236. In charging the DePace brothers, the Government was relying exclusively on an aiding and abetting theory of liability. *See id.* Although neither the indictment, the plea agreement, nor the district court's explanation of the charge explained the aiding and abetting theory that linked the DePace brothers to the firearms carried and used by their co-defendants, we said that the district court's explanation of the charge satisfied the second core objective of Rule 11. *See id.* at 236-37.

In deciding that the district court's explanation of the charge satisfied the second core objective of Rule 11 and the dictates of Rule 11(c)(1), this Court noted that one of the brothers, Steven DePace, was arrested in the hotel room which contained the three loaded weapons at issue. Because of his clear involvement in the substantive crime and his proximity to the weapons, we concluded that the degree of complexity added by the aiding and abetting theory was minimal in his case. *See id.* at 237. With respect to the other brother, Carlton DePace, we acknowledged that he was outside in a van when the drug trafficking offense

16

occurred, making his liability more difficult for a lay person to understand without an explanation of the aiding and abetting theory. *See id.* Nevertheless, because Carlton DePace admitted during the Rule 11 colloquy that he had assisted in the underlying drug trafficking offense and expected to benefit financially from the transaction, that he was represented by counsel, and that he had reviewed the plea agreement and indictment with his counsel, and because he never objected or expressed any confusion throughout the proceeding, even when asked by the district court whether he had questions, we concluded that there was nothing in the record to contradict the district court's conclusion that Carlton DePace adequately comprehended the basis for his plea. *See id.* at 238; *see also Wiggins*, 131 F.3d at 1442-43 (upholding district court's factual determination that defendant understood nature of charge where district court failed to explain elements of offense but where defendant admitted to robbing banks, pled guilty unequivocally, and stated that he understood the charges against him).

In this case, as in the case of Steven DePace, it was not clear from the Government's factual proffer that Appellant actually possessed the cocaine for which she was charged with possession with intent to distribute. Nevertheless, as with Steven DePace vis a vis the weapons at issue in his case, Appellant was in close proximity to the cocaine at the time it was seized. Additionally, the factual

17

proffer suggested that she was the person who arranged for the purchase of the cocaine pursuant to a request from Mr. Canas. Further, as in the case of Carlton DePace, Appellant assisted in the commission of the offense, was represented at the plea colloquy by counsel, acknowledged that she had reviewed the plea agreement and indictment with counsel, never objected to the conduct of the Rule 11 proceedings, and never expressed any confusion as to the nature of the charge against her. Also as in *DePace*, there is nothing in the record to contradict the district court's conclusion that Appellant adequately comprehended the nature of the charge against her. While the district court did not directly question Appellant as to whether she had any questions about the proceedings, Appellant was represented by counsel and had ample opportunity to express any confusion she might have had. Consequently, we conclude that the district court in this case "adequately ensured that [Appellant] understood the nature of the charge," *James*, 210 F.3d at 1344, and thus complied with the requirements of Rule 11(c)(1).

### B.

Appellant next argues that the district court failed to satisfy the second core objective of Rule 11 by failing to ensure that an adequate factual basis supported Appellant's guilty plea in compliance with Rule 11(f). Subsection (f) of Rule 11 provides: "Notwithstanding the acceptance of a plea of guilty, the court should not

18

enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed. R. Crim. P. 11(f). In evaluating whether a district court complied with Rule 11(f), we must determine "whether the [district] court was presented with evidence from which it could reasonably find that the defendant was guilty." *Lopez*, 907 F.2d at 1100. In this case, Appellant argues that the factual proffer of the Government was insufficient to support a plea of guilty to possession of cocaine with intent to distribute. We disagree.

In order to convict a defendant for possession with intent to distribute a controlled substance, the government must prove knowing possession and an intent to distribute. *See United States v. Perez-Tosta*, 36 F.3d 1552, 1559 (11th Cir. 1994); *see also United States v. Gamboa*, 166 F.3d 1327, 1331 (11th Cir. 1999) (three elements comprise crime of possession of controlled substance with intent to distribute: knowledge, possession, and an intent to distribute). To prove guilt under a theory of aiding and abetting, the Government must prove: (1) the substantive offense was committed by someone; (2) the defendant committed an act which contributed to and furthered the offense; and (3) the defendant intended to aid in its commission. *See DePace*, 120 F.3d at 238. Although the district court in this case did not explain the requirements for a conviction under an aiding and abetting theory or discuss directly the significance of the aiding and abetting theory to

19

Appellant, as long as the factual proffer would support Appellant's conviction under the aiding and abetting theory, the district court's acceptance of the factual proffer as sufficient was proper. *See id.* at 239 (holding that district court properly accepted factual proffer as sufficient where proffer would, at most, prove criminal liability under aiding and abetting theory and where neither district court, indictment, nor plea agreement recited requirements for conviction under aiding and abetting theory of criminal liability).

In this case, the Government's factual proffer established that an individual working with the Drug Enforcement Agency approached Mr. Wilson Canas for the purpose of acquiring a certain quantity of cocaine. Mr. Canas then contacted Appellant "who agreed to get Mr. Canas a quantity of cocaine hydrochloride." (R. Vol. 4 at 19.) Mr. Canas met with Appellant and co-defendant Byron Portillo on July 8, 1997, after which Mr. Canas and Appellant got into a car with two other co-defendants and traveled to a grocery store parking lot where they were to meet with the person who was purchasing the cocaine. The driver, however, recognized one of the participants in the transaction as having been arrested and turned immediately around, leaving the parking lot. When the car was subsequently stopped and its occupants arrested, one kilogram of cocaine was found inside.

From these facts, the district court could "reasonably conclude" that

Appellant was guilty of possession of cocaine with intent to distribute under an aiding and abetting theory, at the least.[2] *See Lopez*, 907 F.2d at 1100. Specifically, from the facts proffered, the district court could reasonably conclude that someone in the car knowingly possessed the cocaine with an intent to distribute it; that Appellant arranged for the acquisition of the cocaine, thereby committing an act which contributed to and furthered the unlawful possession; and that Appellant intended to aid in the unlawful possession. Because the facts as proffered would support a conclusion that each of the requirements for criminal liability for possession of cocaine with intent to distribute under an aiding and abetting theory was satisfied, the district court did not violate Rule 11(f) in entering judgment upon the plea, and the second core objective of Rule 11 was met.

IV.

Appellant next argues that the district court committed plain error when it failed to ensure that she was aware of the direct consequences of her guilty plea, the third core objective of Rule 11. *See Mosley*, 175 F.3d at 1322. According to Appellant, the district court failed to satisfy this objective in two ways: first, by

---

[2]Because we hold that the district court could reasonably conclude that the facts as proffered during the Rule 11 colloquy sufficiently supported Appellant's plea of guilty, we need not address the Government's assertion that this Court may also consider facts contained in the presentence investigation report in assessing the sufficiency of the evidence supporting Appellant's plea.

failing to correctly inform her of the maximum period of incarceration she faced; and second, by failing to inform her that if the district court rejected the sentencing recommendations contained in the written plea agreement, she would not have the opportunity to withdraw her plea. We consider each of Appellant's arguments in turn.

## A.

Appellant first asserts, with respect to the third core objective of Rule 11, that the district court committed plain error mandating reversal of her conviction because it failed to correctly inform her of the mandatory sentence she could receive upon entry of judgment against her. Under Rule 11(c)(1), before accepting a guilty plea, the district court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, *inter alia*, "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term . . . ." Fed. R. Crim. P. 11(c)(1). Under plain error review, however, a criminal defendant must show that her substantial rights were impaired by the error, such that "[i]f the defendant does understand the plea and its consequences, then the plea colloquy did not violate the defendant's substantial rights and any technical errors are harmless." *Jones*, 143 F.3d at 1420; *see also*

*United States v. Carey*, 884 F.2d 547, 549 (11th Cir. 1989) (holding no reversible error where district court failed to inform defendant that he would be subject to term of supervised release if sentenced to prison where defendant was subsequently informed both by presentence investigation report and at sentencing hearing of period of supervised release and failed to object, indicating that district court's error was harmless).

In this case, the parties do not dispute that under Count Five of the indictment, Appellant was subject to a maximum penalty of forty years' incarceration and that the district court erroneously informed her during the Rule 11 colloquy that the maximum period of incarceration she faced was 340 years. The issue, then, is whether this technical violation of Rule 11 impaired Appellant's substantial rights requiring reversal of her conviction. We hold that Appellant's substantial rights were not impaired by the district court's mistake.

In so holding, we note that "we have consistently considered written plea agreements to be part of the record of the Rule 11 hearing." *Jones*, 143 F.3d at 1420; *see also Hourihan*, 936 F.2d at 511 (considering content of plea agreement in holding no harmless error where district court failed properly to advise defendant of mandatory minimum sentence in violation of Rule 11(c)(1)). In this case, the plea agreement stated clearly that under Count Five of the indictment

23

Appellant faced a "maximum statutory sentence [of] 40 years incarceration." (R. Vol. 1, Doc. 153 at 1.) Appellant signed the plea agreement, affirming that she had carefully reviewed every part of it with her attorney and that she understood its contents. Additionally, the district court questioned Appellant directly about the plea agreement, and she affirmed that she had reviewed the agreement with her attorney and that she understood its contents. While the contents of a plea agreement do not in any way absolve the district court of its responsibilities to make a personal inquiry in open court pursuant to Rule 11(c)(1), the issue before this Court is whether the district court adequately ensured that Appellant understood the direct consequences of her plea. In concluding that the district court sufficiently satisfied this core objective of Rule 11, we note that at no time during the Rule 11 colloquy or since has Appellant expressed any actual confusion as to the mandatory sentence of incarceration to which she was subject under Count Five of the indictment. The mistake by the district court, adding 300 years to the maximum possible sentence of incarceration, was clearly an inadvertent error and so far above any reasonable sentence that it cannot be said to have likely confused Appellant, particularly when the plea agreement contained the correct maximum sentence, the district court explicitly questioned Appellant as to her understanding of the contents of the plea agreement, and Appellant never

expressed any confusion as to the possible maximum sentence she faced. *See Jones*, 143 F.3d at 1420 (holding no reversible error where the district court failed to inform defendant that he faced fifteen years' mandatory minimum incarceration but where written plea agreement accurately described sentence and district court specifically referred to written plea agreement during Rule 11 colloquy). Therefore, the district court's mistake in stating the incorrect maximum term of incarceration faced by Appellant did not impair Appellant's substantial rights and, thus, was not plain error mandating reversal of her conviction.

## B.

Appellant finally asserts that the district court failed to ensure that she understood the direct consequences of her plea because the district court neglected to inform her during the Rule 11 colloquy that if the court declined to follow the recommendations contained in the plea agreement concerning sentencing, she would nevertheless not be able to withdraw her plea. According to Appellant, this oversight by the district court was a violation of Rule 11(e)(2) and a failure to satisfy the third core objective of Rule 11, requiring reversal of her sentence.

Rule 11(e)(1) contemplates three types of plea agreements between a

25

criminal defendant and the government: (A) an agreement in which the prosecution agrees to move to dismiss other charges in exchange for the defendant's plea; (B) an agreement in which the prosecution agrees, in exchange for the defendant's plea, to recommend, or agree not to oppose the defendant's request for a particular sentence or sentencing range, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor is or is not applicable to the case; and (C) an agreement in which the prosecution agrees that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement or sentencing factor is or is not applicable to the case. *See* Fed. R. Crim. P. 11(e)(1)(A) - (C). The Rule also makes clear that an agreement under subsection (e)(1)(B) is not binding on the court, while an agreement under subsection (e)(1)(C) is binding. *See* Fed. R. Crim. P. 11(e)(1)(B), (C). To ensure that the criminal defendant understands the binding or non-binding nature of the agreement on the court, Rule 11(e)(2) requires that "[i]f the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea." Fed. R.

Crim. P. 11(e)(2).[3]

In this case, it is undisputed that the district court failed to advise Appellant that if the court did not accept the sentencing guideline recommendations contained within the plea agreement, she would not have the opportunity to withdraw her plea. We nevertheless conclude that under the circumstances in this case, the district court's error did not affect Appellant's substantial rights and was not, therefore, plain error.

---

[3]We note that subsections (e)(1)(B) and (e)(1)(C) of Rule 11 were amended following the entry of Appellant's guilty plea and judgment against her. Prior to December 1, 1999, subsection (e)(1)(B) referred only to agreements in which the government's attorney agreed to make a recommendation or not to oppose the defendant's request for a "particular sentence." *See* Fed. R. Crim. P. 11(e)(1)(B) (1999). Similarly, subsection (e)(1)(C) referenced agreements in which the government's attorney agreed that a "specific sentence" was the appropriate disposition of the case." *See id.* According to the Advisory Committee Notes, the 1999 amendments to these subsections were made to "reflect the impact of the Sentencing Guidelines on guilty pleas" and to address numerous courts' struggles "with the subject of guideline sentencing vis a vis plea agreements, entry and timing of guilty pleas, and the ability of the defendant to withdraw a plea of guilty." *See* Fed. R. Crim. P. 11 advisory committee notes. Thus, while the Rule was silent on the matter of recommendations concerning sentencing guideline issues at the time of Appellant's guilty plea, the Rule is now clear that an agreement containing recommendations as to the application of particular sentencing guidelines is an (e)(1)(B) agreement, requiring a Rule 11(e)(2) warning.

At oral argument before this Court, the United States argued, for the first time, that because the Rule was silent on the issue of sentencing guidelines at the time Appellant entered her plea, her agreement with the Government was not an (e)(1)(B) agreement and the district court was not bound by Rule 11(e)(2) to inform Appellant during the Rule 11 colloquy that she could not withdraw her plea in the event the court decided not to adhere to the recommendations contained in the plea agreement. Because we conclude that, even assuming the agreement was an (e)(1)(B) agreement, the district court did not commit plain error in failing to inform Appellant that she would not be able to withdraw her plea, we need not address the Government's argument that prior to the 1999 amendments to the Rule, Rule 11(e)(1)(B) did not apply to the agreement in this case. Since the 1999 amendments do not affect our disposition of the case, we cite the current Rule.

27

First, the district court informed Appellant that it was not bound by the sentencing recommendations contained in the written agreement. Specifically, the district court asked Appellant whether she understood that the "agreement between [Appellant] and the Government concerning guideline matters [were] matters between [her] and the prosecutor" and that "the court [was] not a party to [the agreement]," to which Appellant responded that she did understand. (R. Vol. 4 at 13.) Later during the same hearing, when the district court was questioning Mr. Portillo concerning his plea agreement with the Government, the district court noted that any agreements Mr. Portillo had with the prosecuting attorney did not bind the court, and Mr. Portillo said he understood. While this colloquy was between the district court and Mr. Portillo, Appellant was present, and the district court's statements both to her and to Mr. Portillo made it clear to Appellant that the court was not bound by the sentencing recommendations contained in the plea agreement.

Second, the plea agreement stated clearly that Appellant would not be able to withdraw her plea in the event the court declined to follow the sentencing recommendations contained in the plea agreement. The plea agreement signed by Appellant and discussed during the Rule 11 hearing stated that Appellant understood that sentencing was a matter determined by the court in accordance

with the Sentencing Guidelines and that the sentencing court "[was] not bound by any factual agreement between the parties, or by any recommendation made by the United States." (R. Vol. 1, Doc. 153 at 4.) The agreement also stated that Appellant understood that nothing in the agreement was intended to bind the district court to take any action and the district court's failure to accept one or more of the recommendations made pursuant to the agreement "[did] not constitute either a breach of [the] agreement by the government, or grounds for the withdrawal of the plea of guilty." (*Id.* at 7.) We also note that the district court questioned Appellant directly as to her understanding of, and assent to, the written agreement.

The fact that the plea agreement correctly stated that Appellant would not be able to withdraw her plea distinguishes this case from *United States v. Zickert*, 955 F.2d 665 (11th Cir. 1992), a case relied upon by Appellant. While this Court in *Zickert* held that the district court committed reversible error when it failed to inform the defendant that he would not be able to withdraw his plea if the district court refused to impose the sentence recommended by the Government, crucial to our decision was the fact that we interpreted the plea agreement in that case as implying that the defendant would be able to withdraw his plea if the district court imposed a sentence above that contemplated in the plea agreement. *See id.* at 668-

29

69. We concluded that the district court's error was not harmless because the record indicated "a 'realistic likelihood that [the defendant] labored under the misapprehension that his plea could be withdrawn' if the recommended sentence was not imposed." *Id.* at 669 (quoting *United States v. Thibodeaux*, 811 F.2d 847, 848 (5th Cir. 1987)).

On the other hand, we said in *United States v. Casallas*, 59 F.3d 1173 (11th Cir. 1995), that the district court did not commit plain error when it failed to warn the defendant, pursuant to Rule 11(c)(1), that the court was required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances. *See id.* at 1180. Relying on the fact that the defendant had been advised of the controlling statutory sentence, was sentenced within that range, and admitted that he knew of the existence of the sentencing guidelines, we concluded the error by the district court did not affect his substantial rights. *See id.* We distinguished *Zickert* in that case, noting that the "critical fact" present in *Zickert*–the existence of a written plea agreement specifically stating that the defendant would have an opportunity to withdraw his guilty plea in the event the court rejected the provisions of the agreement–was not present in *Casallas*. *See id.* at 1180 n.11. Similarly, in this case, the plea agreement stated that the district court was not bound by the sentencing recommendations contained in the

30

agreement and that Appellant would not be able to withdraw her plea if the court declined to adhere to those recommendations.

In holding that the district court's error did not affect Appellant's substantial rights, we note finally that the district court sentenced Appellant in full accord with the Government's recommendations as set forth in the plea agreement and pursuant to the Government's motion for a downward departure under the Sentencing Guidelines.  Appellant never attempted to withdraw her plea, nor did she seek reconsideration of the sentence imposed against her.  In short, Appellant received the full benefit of the bargain she made with the Government.  From these facts, combined with the other evidence in the record that Appellant was informed by the court that it was not a party to the plea agreement and that the plea agreement indicated clearly that she would not be able to withdraw her guilty plea in the event the court did not accept one or more of the recommendations, it is apparent that Appellant "'has suffered no concrete prejudice other than entering a plea [s]he now regrets,'"*United States v. Noriega-Millan*, 110 F.3d 162, 167 (1st Cir. 1997) (quoting *United States v. Zorilla*, 982 F.2d 28, 31 (1st Cir. 1992)).  S*ee United States v. McCarthy*, 97 F.3d 1562, 1576 (8th Cir. 1996) (district court's error in failing to warn defendant that he would be unable to withdraw plea pursuant to Rule 11(e)(2) was harmless where plea agreement contained equivalent warning,

district court questioned defendant as to understanding of written agreement, defendant never expressed confusion, and defendant never moved to withdraw plea); *United States v. Thibodeaux*, 811 F.2d 847, 848 (5th Cir. 1987) (district court's error in failing to give warning required under Rule 11(e)(2) was harmless where defendant did not contend he was under impression he could withdraw plea if court did not follow government's sentencing recommendation or that he would have withdrawn his plea if proper warning had been given).  We cannot, therefore, conclude that the district court's error affected Appellant's substantial rights.

V.

Having considered each of Appellant's arguments with respect to the district court's Rule 11 colloquy in this case, we conclude that the colloquy satisfied each of the three core objectives of Rule 11 and that none of the alleged errors affected Appellant's substantial rights.  Appellant has not established that the district court committed plain error, and the district court's judgment is affirmed.

AFFIRMED