[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 18, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11593
Non-Argument Calendar

_____

D. C. Docket No. 02-00424-CR-T-17MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KABIL ANTON DJENASEVIC,
a.k.a. Anton Genase,
a.k.a. Kabil Genase,
a.k.a. Kabil Kraja,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 18, 2007)**

Before TJOFLAT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

## I.

Kabil Djenasevic appeals his sentence of 324 months imprisonment for conspiracy to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), distribution of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(i), and illegal possession of firearms, in violation of 21 U.S.C. §§ 922(g)(1) and 924(a)(2). For the reasons that follow, we affirm.

## II.

In December 2000, authorities arrested Richard Barthel on drug charges. Barthel agreed to cooperate and identified Djenasevic as his source of heroin. Continuing to cooperate with authorities, Barthel purchased 47.6 grams of heroin from Djenasevic on December 23, 2000 and 27.9 grams of heroin on December 28, 2000. On January 3, 2001, Barthel arranged to purchase an additional one-half ounce of heroin, at which time Djenasevic advised him that he had 200 grams available for $18,000. When Djenasevic arrived at the prearranged location for the purchase, he was arrested by state authorities. Authorities searched Djenasevic and his car and located 21.04 grams of heroin. Djenasevic consented for authorities to search his home, where two small caliber handguns, $20,000, of which $3,040 was

2

"marked buy monies," and 147.2 grams of heroin were located.  Two safe deposit tickets were also located at the house, which lead authorities to another $45,920 in a local bank, $1,400 of which was "marked buy monies."

After his arrest, Djenasevic told authorities that during the fall of 2000, he had obtained two one-half-kilogram shipments of heroin from a source in Chicago on two separate occasions and six ounces of heroin from a source in New York. He continued to cooperate with authorities, placing controlled telephone calls to coconspirators and describing his heroin trafficking activities to authorities.

In February 2001, Djenasevic posted bond, was released from county jail, and continued to cooperate with authorities.  By March 2001, however, although facing state charges, he absconded and was subsequently arrested in South Africa while attempting to board a flight to Yugoslavia.  In October 2002, a federal indictment was filed against Djenasevic, and, in November 2002, a superseding indictment was filed, charging him with conspiracy to possess one kilogram or more of heroin with intent to distribute, distribution of heroin, possession with intent to distribute 100 grams or more of heroin, and possession of firearms.

During his pre-trial detention, Djenasevic's counsel arranged for a psychological evaluation by Dr. Debra Goldsmith.  Goldsmith found no indication of psychosis or thought disorder, found Djenasevic's intelligence to be within the

3

average range, and determined his thoughts to be clear, linear, coherent, and goal-oriented. Goldsmith did note, however, a mild impairment of judgment, coping skills, and reasoning abilities. Djenasevic's global assessment of functioning ("GAF") score was 60, which indicated moderate symptoms or difficulty in social, occupational, or school functioning.

In December 2001, Djenasevic pleaded guilty to all five counts in the superseding indictment, and the plea was accepted by the district court. In February 2001, after the initial presentence report was disclosed to the parties, Djenasevic petitioned the court to withdraw his plea. The district court adopted the recommendation of the magistrate judge that Djenasevic's motion be denied. Djenasevic then filed a second motion to withdraw his guilty plea, which was granted by the district court in September 2001.

On August 1, 2005, shortly before trial and with jury selection about to begin, Djenasevic, through new counsel, indicated that he wished to change his plea to guilty. Djenasevic's counsel explained that Djenasevic would plead guilty if the government would not oppose his seeking transfer service of his sentence to Montenegro, a county once part of the former Republic of Yugoslavia and which Djenasevic's counsel proffered had a bilateral transfer agreement with the United States. Djenasevic's counsel stated:

4

> [T]here are bilateral treaties between the United States and certain countries, not every country. But the former Republics of Yugoslavia where Mr. Djenasevic is from do [sic] have this bilateral transfer agreement with the Unites States. So the understanding is that Mr. Djenasevic would be able to make application, but whether or not the Department of Justice approves it and whether or not Yugoslavia accepts him, those are matters that he understands are up in the air at this point.

The government agreed, and stated:

> [W]e would have no objection to making his application, and then if both parties [the United States and the former Republic of Yugoslavia] agree, which we have no idea or control over, then we have no objection to it happening. But I'm not going to give him any commitment that it will happen or that we'll make it happen because we just simply can't do that.

The court agreed as well, and stated that "based on this I would accept your plea as part of the plea agreement that the government will not object and that the Court accepts the plea on that basis that the time could be served there [in Montenegro]. And the Court will not oppose that."

Djenasevic was sworn by the district court and asked if he understood each charge against him. He responded that he did, and the court explained each charge and the maximum penalty each carried. When asked if he had any questions, Djenasevic responded no. The district court also explained that Djenasevic could not change his mind later, to which Djenasevic responded that he wanted to face the consequences of his actions. He then acknowledged that no one had threatened

5

or forced him to enter the guilty plea. The court explained to Djenasevic that he was waiving his right to appeal, and stated that he "can't question the motion to suppress. You can't question the ruling in that." The court also explained that "if the sentence is more sever than you expected, you'll still be bound by your plea." After the government proffered the facts it would have offered at trial, the court found that the government had established a prima facie case. The court went on to hold that Djenasevic was competent and fully understood the nature of the charges against him and the potential penalties. The court also found that Djenasevic was entering his plea of guilty "freely and voluntarily." When asked if he had anything further to add or any questions, Djenasevic responded no and stated, "I'm just sorry for my actions, and I just want to get on with life."

Despite his guilty plea, Djenasevic filed a pro se motion to suppress evidence in August 2005, which the district court struck as unauthorized. Djenasevic's counsel then filed a motion to withdraw, while Djenasevic filed a pro se motion for withdrawal of counsel, which alleged ineffective assistance of counsel based on a failure to secure suppression of evidence. The district court denied the motions, finding that Djenasevic's counsel ably counseled his client, no good reason existed to permit withdrawal, and any new counsel would be in the same position. In September 2005, Djenasevic again filed a pro se motion to

6

suppress, which was denied. Djenasevic's counsel then moved again for withdrawal, which was granted.

On October 4, 2004, through substitute counsel, Djenasevic moved to withdraw his second plea of guilty because: (1) the plea was not free, voluntary, or knowledgeable; (2) he was not guilty; and (3) he did not intend to waive any rights when he pled guilty. The district court denied the motion.

Prior to sentencing, Djenasevic objected to the Presentence Investigation Report ("PSI"), arguing, inter alia, that the quantity of heroin attributed to him was incorrect, that the enhancement for obstruction of justice was unjustified, and that he should have been given a reduction for acceptance of responsibility. Djenasevic also moved for a downward departure or sentence below the range pursuant to § 5K2.0 and, alternatively, 18 U.S.C. § 3553 based on 44 grounds, including his cooperation with authorities.

At the sentencing hearing, Djenasevic complained that his new counsel had not sufficiently reviewed the PSI with him. His counsel, however, stated that he had reviewed the report with his client in person, in writing, and by telephone. Djenasevic then argued that the evidence against him should be suppressed, that his involvement with drugs was not of his free will, and that his cousin had induced him to sell heroin. He told the court that he pled guilty because he wanted

7

to get the case over. The court then heard objections to the PSI from both Djenasevic and his counsel.

Djenasevic first objected to the heroin attributed to him for sentencing purposes. When the court consulted the plea colloquy and found that Djenasevic had admitted to the amount, Djenasevic responded that he had been in a trance when pleading guilty and that his counsel had informed him that he could dispute the amount. The court then confirmed Djenasevic's present mental capacity. Second, Djenasevic objected to the obstruction of justice enhancement, arguing that he had not been indicted when he fled the country. The government responded that Djenasevic had been charged by the state at the time he fled. Third, Djenasevic requested an acceptance of responsibility reduction because he entered a guilty plea. He also argued that he had accepted responsibility and was only continuing to argue about the appropriate charges. The probation officer argued that a reduction was inappropriate because Djenasevic obstructed justice and did not enter a timely plea. The government also argued that Djenasevic had not accepted responsibility and noted that the government had spent time and incurred expenses preparing for trial before Djenasevic entered his plea of guilty.

The district court denied all of the objections and adopted the PSI, which contained a total offense level of 36, a criminal history category of VI, and a

guideline range of 324 to 405 months imprisonment.

Djenasevic then renewed his motion under § 5K2.0 and 18 U.S.C. § 3553, arguing that his offense level should be reduced to 26, with a guideline range of 120 to 150 months imprisonment. Although Djenasevic's counsel noted that his client had requested the inclusion of 40 grounds in support of this motion, he admitted that many were unclear. Djenasevic's counsel then argued that his client suffered from an involuntary drug addition because doctors failed to wean him from pain medication, that he was entrapped into a higher sentence by authorities who convinced him to purchase more drugs, and that he suffered from a diminished mental capacity. Djenasevic himself then argued that he had not intended to distribute drugs, that the amount of heroin was overstated, and that his physical illness from heroin withdrawal prohibited him from abandoning the conspiracy.

Djenasevic also argued that he could not successfully apply for a transfer to Montenegro without an acceptance of responsibility reduction. The district court, however, concluded that Djenasevic had not accepted responsibility, noting that he pleaded guilty, stipulated to the facts, and then persisted in denying what he had admitted. Djenasevic responded pro se by moving that he be permitted to withdraw his guilty plea and that the court dismiss the indictment. Djenasevic

9

argued that he entered his plea under duress caused by: (1) his previous counsel's ineffective and deficient representation during the motion to suppress hearing; (2) deprivation of his constitutional rights; (3) his heroin addiction; (4) abuse suffered while detained; and (5) improper evidence. The court granted the government's motion to strike Djenasevic's motion and, alternatively, denied the motion on the merits. The district court then ruled "with regard to all of these defendant's motions for downward departure. Each and every one of them is denied. And your motion with regard to § 3553(a)(1) through (7), request for Level 26, Roman Numeral VI, 120 to 150, that's also denied."

Before handing down the sentence, the court stated that it considered the factors in the presentence report, the advisory guidelines, Djenasevic's criminal history, the factors in 18 U.S.C. § 3553(a)(1) through (7), and what is a reasonable, adequate, and sufficient sentence. The court then specifically noted, <u>inter alia</u>, that Djenasevic had an extensive criminal history, that he had not cooperated with the government, and the need to both punish the defendant and deter others. The court sentenced Djenasevic to the 324 months imprisonment, which was at the low end of the guideline range, and 60 months of supervised release. The court stated, "defendant is permitted to seek a bilateral agreement with the sovereign State of Montenegro to effectuate service of a sentence of imprisonment there. The Court

10

and the United States Attorney's Office will not do anything to actively promote or deter the same."

Djenasevic now appeals.

## III.

Djenasevic first argues that he involuntarily pleaded guilty because his attorney erroneously advised him that he could apply to transfer service of his sentence to Montenegro. Although Djenasevic admits that he can still apply for a transfer, he contends that if he had known that the "treaty transfer" was between the United States and Serbia and Montenegro, with Serbia processing the applications, he would not have pleaded guilty because Serbia would discriminate against him.

Where a defendant fails to object to the plea proceedings, we review the district court's compliance with Federal Rule of Criminal Procedure ("Rule") 11 for plain error to prevent manifest injustice. United States v. Lejarde-Rada, 319 F.3d 1288, 1290 (11th Cir. 2003). Under this standard, the error must be plain, affect substantial rights, and call into question the integrity of the judicial system. United States v. Olano, 507 U.S. 725, 731-32, 113 S. Ct. 1770, 1777, 123 L. Ed. 2d 508 (1993). Where neither precedent nor the explicit language of the rule specifically resolves an issue, plain error cannot exist. Lejarde-Rada, 319 F.3d at

11

1291.

Although Djenasevic moved to withdraw his plea during sentencing, he did not argue that the plea was void because of a mistake as to the transfer of service treaty. Furthermore, at the end of the sentencing hearing, the court restated the terms of the plea agreement and asked if there were any objections, to which Djenasevic stated there were none. Therefore, plain error review is appropriate.

Due process requires that a guilty plea be voluntary and knowing. McCarthy v. United States, 394 U.S. 459, 466, 89 S. Ct. 1166, 1171, 22 L. Ed. 2d 418 (1969). This court requires that a district court accepting a plea of guilty comply with the three core concerns of Rule 11 by ensuring: (1) the guilty plea is free from coercion; (2) the defendant understands the nature of the charges; and (3) the defendant understands the direct consequences of his plea. United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999). The Supreme Court has held "that a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340, 159 L. Ed. 2d 157 (2004).

Here, we conclude that the plea colloquy reveals that Djenasevic knowingly and voluntarily entered a plea of guilty, and the district court ensured that the

requirements of Rule 11 were met. The court carefully reviewed Djenasevic's rights, what he would waive if he pleaded guilty, the terms of the plea agreement, and the potential sentences. The court confirmed that Djenasevic understood the plea and that he was entering it freely and voluntarily. It also was made clear, even by Djenasevic's own counsel, that, although the United States Attorney's Office and the court agreed not to oppose the proposed transfer, there was no guarantee that it would be granted by either the Department of Justice ("DOJ") or Montenegro. Moreover, Djenasevic cannot demonstrate that he would not have entered into the plea agreement had he known that Serbia was involved in the application process. In fact, in the letter from Djenasevic's wife, included as part of the PSI report, she indicates that they had contacted the "Serbian/Montenegro Embassy and they will work with us for his transfer." It therefore appears Djenasevic may have known of the involvement of Serbia at the time of his sentencing. Regardless, Djenasevic is still able to make application for transfer of his sentence to Montenegro, and it appears clear that during the entering of his plea Djenasevic understood that there were no guarantees that his application would be successful. Thus, Djenasevic's plea was voluntary and knowing.[1]

---

[1]Additionally, as the Government correctly notes, it appears as though Djenasevic is asserting an ineffective assistance of counsel claim on this direct appeal. Generally, this court does not consider ineffective assistance of counsel claims on direct appeal because there usually has been insufficient opportunity to develop the record regarding the merits of these claims.

Second, Djenasevic argues that the United States Attorney's Office breached the plea agreement by arguing that he should not receive credit for acceptance of responsibility. Djenasevic contends that the DOJ considers acceptance of responsibility as a positive factor when evaluating an application for transfer.

We review de novo whether the government has breached a plea agreement. United States v. Mahique, 150 F.3d 1330, 1332 (11th Cir. 1998). Here, however, Djenasevic objected to the failure to apply an acceptance of responsibility reduction without alleging that the government's position regarding this reduction constituted a breach of the plea agreement. Where a defendant fails to object to the alleged breach in the district court, we review for plain error to prevent manifest injustice. Id.

The government is bound by promises it makes to a defendant to induce the defendant to plead guilty. United States v. Johnson, 132 F.3d 628, 630 (11th Cir. 1998). In determining whether the government breached the plea agreement, a court must first determine the scope of the government's promise. Raulerson v. United States, 901 F.2d 1009, 1011 (11th Cir. 1990). Whether the government violated its promises in the plea agreement is judged according to the defendant's

United States v. Andrews, 953 F.2d 1312, 1327 (11th Cir.), cert. denied, 505 U.S. 1210, 112 S. Ct. 3007, 120 L. Ed. 2d 882, and cert. denied, 505 U.S. 1210, 112 S. Ct. 3008, 120 L. Ed. 2d 882, and cert. denied, 505 U.S. 1227, 112 S. Ct. 3048, 120 L. Ed. 2d 915 (1992). This case is no different. We, therefore, dismiss any ineffective assistance of counsel claim without prejudice.

14

reasonable understanding at the time that he entered his plea.  Id.

The record here demonstrates that the government only promised not to oppose an application to the DOJ for the transfer of Djenasevic's sentence.  There was no promise with regard to the acceptance of responsibility reduction. Furthermore, Djenasevic admits that acceptance of responsibility is merely one of many factors considered by the DOJ and is not dispositive regarding whether a request for transfer will be granted.  As such, the government's opposition to an acceptance of responsibility reduction for Djenasevic was not a breach of the plea agreement.

Finally, Djenasevic argues that his sentence was not reasonable in light of his reduced mental capacity as a result of mental illness, substance abuse, and addiction.  He also argues that the involuntary nature of his addiction justified a reduced sentence.

After United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), this court reviews a defendant's sentence for reasonableness.  United States v. Dowd, 451 F.3d 1244, 1256 (11th Cir. 2006); United States v. Winingear, 422 F.3d 1241, 1244 (11th Cir. 2005); United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005).  Djenasevic bears the burden of showing that his sentence was unreasonable.  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).  In

15

imposing sentence, the district court must consider the factors in § 3553(a), such as the nature and circumstances of the offense, the history and characteristics of the defendant, the need for adequate deterrence and protection of the public, the pertinent Sentencing Commission policy statements, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)-(7). But, the district court is not required to mention each of the § 3553(a) factors, and it is sufficient if the record reflects that the court considered the factors. United States v. Johnson, 451 F.3d 1239, 1244 (11th Cir. 2006).

Here, the district court specifically considered all of the factors in § 3553(a), including Djenasevic's history and characteristics. The court considered his mental, emotional, social, and addiction issues. We conclude, therefore, that Djenasevic's argument is without merit. The district court properly considered the factors in § 3553(a) and Djenasevic's arguments regarding his mental conditions and sentenced Djenasevic to a reasonable sentence, which was at the low end of the applicable guideline range.

IV.

Accordingly, we **AFFIRM**.