PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
04/26/99
THOMAS K. KAHN
CLERK

_____

No. 96-9475

_____

D. C. Docket No. 1:96cr112-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY MARCELL MOSLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 26, 1999)**

Before EDMONDSON and BIRCH, Circuit Judges, and LAWSON*, District Judge.

_____

*Honorable Hugh Lawson, U.S. District Judge for the Middle District of Georgia, sitting by designation.

BIRCH, Circuit Judge:

This appeal presents the issue of whether a guilty plea that occurs during trial can be considered in context of the trial proceedings for the purpose of complying with Federal Rule of Criminal Procedure 11(c)(1). Specifically, this case concerns whether the defendant adequately was informed of the interstate commerce element of his crime, a convicted felon possessing a firearm, and the potential period of supervised release under the Sentencing Guidelines. On the facts of this case, we affirm.

## I. BACKGROUND

On July 12, 1995, defendant-appellant, Anthony Marcell Mosley, was arrested in Atlanta, Georgia, by Federal Bureau of Investigation ("FBI") agents pursuant to a probation violation warrant from Jefferson County, Alabama.[1] While physically searching Mosley, the FBI agents discovered and seized a .22 caliber Magnum Derringer pistol and a .9mm Bryco semi-automatic pistol. Both weapons were loaded. At the time of this arrest, Mosley previously had been convicted of robbery in Alabama and armed robbery in Georgia. He subsequently was indicted in the United States District Court for the Northern District of Georgia for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924.

---

[1] The FBI agents also advised Mosley of another warrant issued by the United States District Court for the Northern District of Alabama for unlawful flight to avoid prosecution. Additionally, Mosley was sought by Cobb County, Georgia, on a charge of aggravated assault resulting from a shooting there on July 3, 1995.

Mosley's federal trial commenced at 9:30 A.M. on August 26, 1996. A jury was selected, and, at approximately 11:50 A.M., the prosecution and the defense gave opening statements. The prosecutor explained the elements of the crime of possession of a firearm by a convicted felon and the evidence that the government would present to prove its case. Mosley's attorney specifically asked the jurors to concentrate on the interstate commerce element of the crime. Thereafter, three government witnesses testified before the lunch recess at 12:30 P.M. The first two witnesses, the FBI agents who arrested Mosley, testified about the handguns that they found when they searched him. The other witness, the records custodian of North American Arms Company, manufacturer of one of the handguns that Mosley possessed when he was arrested, testified regarding the interstate commerce movement of this firearm.

When the trial resumed at 1:40 P.M., Mosley's counsel announced that he wanted to plead guilty. The district judge stated his concern regarding the plea, "encouraged by [Mosley's] previous conduct, . . . that he will try somehow to back out of it down the road." R4-3. He explained that the jury had been impaneled because Mosley "didn't want to plead guilty; he has a jury trial." Id. The judge further advised that he did not "want [Mosley] to labor under the impression at this point that pleading guilty is going to bring him any better situation than hearing from the jury about it." Id. Nevertheless, Mosley's counsel insisted that he "would like very much to plead guilty at this time." Id.

3

Mosley was placed under oath and the district judge conducted the Rule 11 plea colloquy. The judge elicited that Mosley was twenty-six years old with a ninth-grade education and that he was not under the influence of medication, alcohol, or controlled substances. The judge confirmed Mosley's prior felonies and the sentences that he had received for those crimes.

The district judge noted that Mosley's trial had commenced and asked if there had been sufficient time for Mosley to discuss his guilty plea with his attorney. Mosley stated that he had and that his plea was free and voluntary. The judge explained that the government had the burden of proving Mosley guilty beyond a reasonable doubt and that his plea would preclude his right to appeal a jury verdict.

The judge then asked the prosecutor to state the balance of the government's case, or the proof that it would present in addition to the trial testimony from that morning. The prosecutor advised the district judge and Mosley of the factual basis for the government's case that established the elements of Mosley's crime, possession of a firearm that had been in interstate commerce by a convicted felon.[2] At the conclusion of this recitation, the district judge questioned Mosley concerning the government's evidence:

> THE COURT: . . . You have heard, Mr. Mosley, what [the prosecutor] says the rest of the government's evidence in this case would show.

---

[2] The prosecutor tendered into evidence a certified copy of the Fulton County conviction for armed robbery to which Mosley pled guilty and received a five-year sentence. Mosley was convicted of that armed robbery charge under the alias of Anthony Fuller. See R4-14-15.

4

> And of course she has also summarized the evidence we have already heard.
>
> Do you have any disagreement with those facts?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Well, let me ask you this, are you the Anthony Fuller who was convicted of armed robbery in Fulton Superior Court back in March or April of '91, during that term of court?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And did you, in fact, have in your possession in the summer of '95 the two firearms that have been introduced into evidence in court here today?
>
> THE DEFENDANT: Yes, sir.

R4-16 (emphasis added).

Confirming to the judge that there was no factual reason that Mosley should not plead guilty, his attorney then requested the prosecutor to state to Mosley the maximum statutory sentence, although his attorney said that she had informed him of the maximum sentence of ten years of imprisonment. The prosecutor responded: "It is ten years, with [a] maximum of a $250,000 fine, and three years supervised release with a $50 special assessment." Id. at 18. In response to the district judge's inquiry as to whether there was a statutory minimum sentence, the prosecutor responded: "There is no minimum sentence." Id.

Prior to accepting Mosley's plea, the district judge ascertained from Mosley and his counsel that there was no reason not to proceed with the plea:

> THE COURT: And you are not saying now that there is any reason I should not accept his plea, are you?

5

[DEFENSE COUNSEL]: <u>No, I am not</u>, Your Honor.

THE COURT: <u>Mr. Mosley, do you know of any reason I should not accept your plea of guilty at this time?</u>

THE DEFENDANT: <u>No, sir.</u>

THE COURT: . . .
From what you have said, and certainly from what I have heard from the government, it is my determination, Mr. Mosley, that your plea of guilty this afternoon is being made by you freely and voluntarily. And that is that you understand what your rights are in this case, far more, I might say, tha[n] most defendants who stand where you are. And that you are voluntarily, although perhaps reluctantly, giving them up in connection with your plea of guilty in this case. And further there is certainly a factual basis to support a plea of guilty, and to authorize a jury, or any other fact-finder to find you guilty beyond a reasonable doubt.

<u>Id.</u> at 19-20 (emphasis added).

Mosley's presentence investigation report ("PSR"), prepared on October 1, 1996, advised Mosley and his attorney that, as a Class C felon, he had a potential period of supervised release under the Sentencing Guidelines of two to three years. On November 1, 1996, Mosley's <u>pro se</u> motion to withdraw his guilty plea based on ineffective assistance of counsel was filed. He did not challenge his plea colloquy under Rule 11(c)(1). The district judge denied this motion. On November 26, 1996, Mosley was sentenced to seventy-two months of imprisonment, three years of supervised release, two hundred hours of community service, and a $50 special assessment. Neither Mosley nor his attorney stated any objection at his sentencing to the failure of the district judge to comply with Rule 11(c)(1) at the plea colloquy.

Mosley filed a timely notice of appeal, and the magistrate judge appointed another attorney to be his appellate counsel because of his contentions of ineffective representation by his trial counsel. Mosley currently is incarcerated serving his sentence. On appeal, he argues that the district judge failed to comply with the requirements of Rule 11(c)(1) in taking his plea and that the judge should have granted his motion under Federal Rule of Criminal Procedure 32(e) to withdraw his guilty plea.

## II. DISCUSSION

Mosley specifically argues on appeal that his guilty plea is invalid under Rule 11(c)(1) because the district judge did not ascertain that Mosley understood the nature of the charges to which he pled guilty with respect to the interstate commerce element of his crime and did not inform him of the Sentencing Guidelines potential range of supervised release. These allegations implicate two of the three "core principles" that we have recognized as being requisite to a knowing and voluntary guilty plea: "'(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea.'" United States v. Jones, 143 F.3d 1417, 1418-19 (11th Cir. 1998) (per curiam) (citation omitted). The Supreme Court has stated that "[t]he nature of the inquiry required by Rule 11 must necessarily vary from case to case." McCarthy v. United States,

394 U.S. 459, 467 n.20, 89 S.Ct. 1166, 1171 n.20 (1969); see Jones, 143 F.3d at 1419 ("There are no hard and fast rules limiting a district court's conduct of a plea colloquy."). Because Mosley did not object to the Rule 11 colloquy in district court, he must show plain error on direct appeal.[3] See United States v. Quinones, 97 F.3d 473, 475 (11th Cir. 1996) (per curiam).

Regarding a defendant's understanding of "the nature of the charge to which the plea is offered," Fed. R. Crim. P. 11(c)(1), "there is no one mechanical way or precise juncture" to which a district judge must conform in advising a defendant of the charges to which he is pleading guilty, United States v. Wiggins, 131 F.3d 1440, 1443 (11th Cir. 1997) (per curiam). We assess each plea colloquy "individually based on various factors, such as the simplicity or complexity of the charges and the defendant's sophistication and intelligence." Id. These matters are better committed to the good judgment of the district judge, who observes the defendant's demeanor, life experience, and intelligence. See id. at 1442, 1443; United States v. DePace, 120 F.3d 233, 237 (11th Cir. 1997) (stating that the inquiry for a defendant's understanding of the nature of the charges "varies from case to case depending on 'the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence'" (citation omitted)), cert. denied, ___ U.S. ___, 118 S.Ct. 1177 (1998).

---

[3] Plain error "is clear or obvious and affects substantial rights"; "the defendant bears the burden of persuasion with respect to prejudice," in contrast to harmless error analysis. United States v. Quinones, 97 F.3d 473, 475 (11th Cir. 1996) (per curiam) (citing United States v. Olano, 507 U.S. 725, 732-36, 113 S.Ct. 1770, 1777-78 (1993)).

We employed this analysis in affirming a guilty plea where the defendant, in response to the district judge's question, after an explanation of the indictment charge to which he was pleading guilty, stated that he "wasn't real sure" that he understood the Travel Act, 18 U.S.C. § 1952, or his liability for his conconspirators' foreign travel in the marijuana enterprise. United States v. Byrd, 804 F.2d 1204, 1206 (11th Cir. 1986). Acknowledging that such isolated responses in a plea colloquy could "raise a serious question as to whether the defendant did understand the nature of the charges to which he was pleading," we clarified that "our duty is to view the record as a whole" to determine if there is a "common sense basis" for concluding that "the trial judge fully satisfied himself" that the defendant understood the crime to which he pled guilty. Id. The record as a whole showed that the judge ascertained that the defendant's counsel had explained the charge to him, that the defendant was not under the influence of medication or controlled substances, and that he freely and voluntarily pled guilty. In Byrd, we found it significant "that the trial judge had the opportunity to observe the defendant's demeanor, appearance, tone, etc., during the plea colloquy," and concluded that the judge's accepting the guilty plea was his finding "that the defendant understood the charges." Byrd, 804 F.2d at 1208. Furthermore, our "entire record" review, Wiggins, 131 F.3d at 1444, enabled us to affirm a guilty plea where the district judge asked the prosecutor to relate the material facts of the crime, which "incorporated the substance of th[e] elements" of the crime, id. at

9

1442, the defendant unequivocally admitted committing the crime, and the judge, who had observed the demeanor and intelligence of the defendant, "made an express factual finding at the end of the plea colloquy that [the defendant] had entered an informed plea," id. at 1443.

In United States v. Lopez, 907 F.2d 1096 (11th Cir. 1990), we used our "record as a whole" analysis in a trial context. Defendants-appellants Beruvides and Lopez pled guilty to violating RICO on the fourth day of trial, after opening statements and the testimonies of five government witnesses. The district judge questioned Beruvides specifically about the first predicate act charged in the RICO count and referred to the other four predicate acts only by their numbers. He did not question Beruvides concerning whether he understood these latter predicate acts or ask if he had discussed them with his attorney. In establishing a factual basis for the pleas, "the government relied on its opening statement and the testimony of witnesses" that preceded the pleas. Id. at 1098. Beruvides agreed that the government was prepared to prove the elements of the RICO charge beyond a reasonable doubt and stated that he had nothing that he needed to discuss with his attorney or the judge concerning the RICO charges. At his "virtually identical" plea colloquy, Lopez, who had been present for the Rule 11 proceedings for Beruvides, "acknowledged that he had heard the court's colloquy with Beruvides on the RICO count and fully understood the count." Id.

We rejected appellate contentions by Beruvides and Lopez that the district judge erred by not reading all the predicate RICO acts to them or failing to describe in greater detail the elements of the RICO crime. See id. at 1100 (citing Byrd in which the Rule 11 colloquy was "more ambiguous" than Lopez). Based on the "relative sophistication" of Beruvides and Lopez, who were police officers, the "moderately complex nature of the RICO charge," and the Rule 11 colloquy, we concluded that the district judge was not clearly erroneous in determining that they understood the nature of the crime to which they pled guilty and in accepting their pleas. Id. To decide whether a defendant understands the nature of the charges to which he is pleading, "we must review the record of the Rule 11 hearing as a whole and affirm the district court if the record provides a basis for the court's finding that the defendant understood what he was admitting and that what he was admitting constituted the crime charged." Id. at 1099.

Lopez is instructive in defining the whole record review when a Rule 11 colloquy occurs during a trial. Rather than focusing on the plea colloquy in a vacuum and ignoring the trial to the point at which the pleas occurred, we affirmed the district judge's consideration of the facts relating to the charged crime in the government's opening statement and the testimonies of the government witnesses in addition to the information elicited at the Rule 11 colloquy to determine that the defendants understood the crimes to which they pled guilty. Thus, when a guilty plea is taken during trial, the district judge is justified in considering the trial

record together with information provided during the plea colloquy in determining whether the defendant understands the nature of the crime to which he is pleading guilty for the purpose of complying with Rule 11(c)(1). The government's represented or established objective facts that influence a defendant who is present during his trial to plead guilty should not be disregarded when the district judge decides whether the defendant subjectively understands the nature of the crime to which he is pleading guilty.

In this case, Mosley contends that he was not advised adequately about the interstate nexus element of the crime to which he pled guilty. Because Mosley was in the midst of his trial when he decided to plead guilty, we review the whole record, including opening statements, witnesses' testimonies, and the plea colloquy to determine whether the district judge properly concluded that Mosley understood the interstate commerce element of his crime.[4] A couple of hours before he pled guilty, Mosley had heard the prosecutor relate in her opening statement the government's proof regarding the interstate commerce element of his crime.[5] The

_____

[4] We distinguish <u>Quinones</u>, upon which Mosley relies, because the guilty plea in that case did not occur during trial. Like most guilty pleas, it was a separate proceeding. Additionally, the district judge in <u>Quinones</u> did not explain the charge whatsoever or ascertain if the defendant understood the elements of the charge. See <u>Quinones</u>, 97 F.3d at 475. In contrast to this case, the <u>Quinones</u> "record . . . g[ave] no indication that [the defendant] knew or understood the elements comprising [the] charge." <u>Id.</u>

[5] The prosecutor explained the elements of the crime of possessing a firearm by a convicted felon and, specifically, how the government would prove the interstate commerce element in her opening statement:

What the government has to prove in this case is, <u>number one, the defendant possessed a firearm.</u> We intend to prove that he possessed two plus the ammunition. <u>That he is a convicted felon.</u> We intend to prove that he is a

12

short opening statement by Mosley's attorney focused on the interstate commerce element of his crime.[6] Because this was Mosley's trial defense, clearly he knew of this element of his crime in discussing his case with his attorney.

Following the opening statements, the two FBI agents who arrested Mosley testified concerning the two handguns that they found when they searched him. The last witness before the lunch recess was the records custodian for the

---

convicted felon, convicted of armed robbery which is a felony in the State of Georgia. And, <u>three, that one or more of the weapons he possessed had moved at some point in interstate commerce. What that means is that the weapons, one or more of them, had moved across state lines at some point</u>.
     The evidence will show that the .22 Derringer was manufactured by North American Arms Corporation which is located in the State of Utah and was subsequently shipped interstate. The nine millimeter was manufactured by Bryco. It was not manufactured in the State of Georgia either.
     The government intends to prove these facts to you beyond a reasonable doubt. As I have stated, this is a very simple case. It shouldn't take long for us to present the evidence and then it shouldn't take long, I estimate, ladies and gentlemen, for you to reach a verdict on this case.

R3-71-72 (emphasis added).

[6] In her succinct opening statement, Mosley's attorney addressed only the interstate commerce element of his crime:

     As [the prosecutor] said, this is a simple case, and what I have to say to you is very simple. The case charged against Mr. Mosley in this courthouse is a federal case, as you know or you probably have realized. And <u>one of the components of that crime for the government to prove is that there was an impact on interstate commerce in order for this to be a federal case.</u>
     Very simply, ladies and gentlemen, <u>we believe that the evidence will show that there is not a sufficient impact on interstate commerce for this to be a federal case</u> and at the close of the case we will ask you to enter a finding of not guilty on that basis.
. . . .
But simply put, <u>we ask you to focus on interstate commerce as you listen to the facts of the case and to consider very carefully whether this should be found to be a federal case</u> by you.

R3-72-73 (emphasis added).

13

manufacturer of one of the handguns possessed by Mosley. He testified that the .22 caliber Derringer was manufactured in Utah and shipped to Jacksonville, Florida, for sale. Thus, the government had established Mosley's possession of two handguns and the interstate nexus for his crime before the lunch recess. This proof obviously influenced Mosley's decision to plead guilty since he knew of his prior felony convictions.

Responding at the plea colloquy to the judge's inquiry concerning the balance of the government's case, the prosecutor repeated the government's proof concerning the interstate commerce element of the crime: "Further we would show that the North American Arms .22 pistol was manufactured in Utah, then shipped to Florida, and somehow ended up in Georgia. The nine millimeter Bryco was manufactured in California. That would satisfy the interstate nexus elements." R4-15 (emphasis added). The district judge then ascertained that Mosley had discussed his guilty plea with his attorney, that he accepted the factual basis stated by the government for his crime, which included the interstate commerce element, and that his guilty plea was free and voluntary. See DePace, 120 F.3d at 236-38 (affirming guilty pleas, although the district judge did not discuss aiding and abetting theory of liability for coconspirators' acts). In response to the judge's questioning, Mosley averred that he did not need to discuss his case further with his attorney, who did not object to Mosley's pleading guilty, and that the government's evidence, which included the interstate commerce of the handguns

14

found on Mosley, would establish the elements of his crime. See id. at 238 & n.6 (finding it significant in affirming guilty pleas that defendants never said that they did not understand the nature of the charges and that their counsel did not object to the guilty pleas).

We also consider that "[t]he crime of being a felon in possession of a firearm is easily understood," although Mosley had only a ninth-grade education.[7] Jones, 143 F.3d at 1419. In addition to the government's having explained and established the interstate nexus at trial, Mosley plainly admitted to the judge that he possessed the handguns seized from him and that he had prior felony convictions after the judge had determined that he had no impairments to preclude his decision to plead guilty.[8] See id. (finding admissions of committing the factual elements of § 922(g)(1) by defendant with tenth-grade education significant to accepting plea); DePace, 120 F.3d at 236 (affirming guilty pleas where defendants agreed with government's factual proffer and admitted commission of crime). Furthermore, Mosley had the opportunity, even the encouragement from the district judge, to proceed with his jury trial if he was not absolutely certain that he wanted to plead

---

[7] In conducting the plea colloquy, the district judge may exercise his judgment in determining whether a defendant understands the elements of the crime to which he is pleading guilty. See Lopez, 907 F.2d at 1099. While we concluded that reading the RICO indictment count was sufficient for the police officers, who were defendants in Lopez, because they "were not uneducated lay individuals with little knowledge of the criminal offenses with which they were charged," id., we also have recognized "that even a detailed explanation of an offense will not suffice under Rule 11 if the defendant lacks the capacity to understand or otherwise fails to comprehend it," Byrd, 804 F.2d at 1207.

[8] We further note that Mosley reaffirmed at his sentencing "that I totally accept responsibility for having the weapons[s] because I am guilty for them." R5-148.

guilty. In view of the entire record, including the opening statements, witnesses' testimonies, and the plea colloquy, we conclude that the district judge was not clearly erroneous in his implicit determination that Mosley sufficiently understood the interstate commerce element of his crime and in accepting his guilty plea; with no objection to the plea colloquy on this basis until this appeal, nothing in the record contradicts our decision. See DePace, 120 F.3d at 238 ("hold[ing] that the district court's implicit factual finding that [the defendant] understood the nature of the charges was not clearly erroneous" because the record did not "contradict the district court's conclusion that [the defendant] adequately comprehended the basis for his plea").

Mosley also contends that the district judge erred in not informing him of the Sentencing Guidelines potential supervised release period of two to three years. Before accepting a plea, the district judge must determine that the defendant understands "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances." Fed. R. Crim. P. 11(c)(1). At the request of Mosley's counsel, the prosecutor stated the mandatory statutory sentence and, at the request of the judge, she stated that there was no minimum statutory sentence.[9]

_____

[9] To the extent that Mosley argues that the district judge, instead of the prosecutor, should have told him of his sentence, we note that his counsel at the plea colloquy specifically asked

16

Concerning Mosley's sentence, the district judge ascertained at the plea colloquy that Mosley had discussed the effect of the Sentencing Guidelines on his sentence with his attorney and needed no additional information to plead guilty, which the judge verified with Mosley's attorney:

> THE COURT: <u>Have you talked to your lawyer about the Guidelines in this case about where your sentence might fall, do you have some idea about that?</u>
>
> THE DEFENDANT: Well, <u>yes, sir</u>, I have some general ideas. <u>Yes, sir.</u>
>
> THE COURT: <u>You know in the federal system they have Sentencing Guidelines that control the Judge's ability to fix a sentence.</u>
>
> THE DEFENDANT: <u>Yes, sir.</u>
>
> THE COURT: Both top and bottom; right?
>
> THE DEFENDANT: Yes, sir.
>     . . . .
> THE COURT: <u>Do you understand that instead of sentencing you today,</u> before I take your plea, <u>we will let the probation department conduct an investigation and prepare a report</u> about your background and <u>about the kind of case it is, and suggestions about where it fits in the Guidelines</u> and that sort of thing, and then you would be sentenced later?  Do you understand that?
>
> THE DEFENDANT: <u>Yes, sir</u>.
>     . . . .
> THE COURT: Well, let me ask you this, [defense counsel].  Have you had enough time and opportunity to investigate  the facts of this case,

---

the prosecutor to advise Mosley of his sentence.  <u>See</u> R4-18.  Additionally, we have upheld a guilty plea when, in conducting the plea colloquy, the district judge asked the prosecutor to inform the defendant of a core principle of Rule 11.  <u>See</u> <u>Wiggins</u>, 131 F.3d at 1442 (district judge asked prosecutor to relate the factual background for the charges, which incorporated the substantive elements of the crime, before the defendant pled guilty).

to confer with Mr. Mosley, <u>to go over the Guidelines with him</u>, to review legal issues in the case with him, and sufficiently?  In other words, you don't need anymore time for any of those things?

[DEFENSE COUNSEL]: <u>I don't feel I need more time on those, no, Your Honor.</u>

R4-10, 13-14, 19 (emphasis added).

When the defendant is informed of a mandatory statutory sentence at his plea colloquy and sentenced within that range, we have determined that the failure to advise of a Sentencing Guidelines  sentencing range is harmless error under Federal Rule of Criminal Procedure 11(h),[10] as long as the defendant knew that the Sentencing Guidelines existed and that they would affect his sentence.  <u>See</u> <u>United States v. Casallas</u>, 59 F.3d 1173, 1180 (11th Cir. 1995).  As we explained:

> <u>The law is clear that the district court was not required to ascertain and communicate to appellant an estimate of the guideline range.</u>  <u>See</u> Commentary to Rule 11(c)(1) (indicating that a defendant is not entitled to know his guideline range prior to pleading guilty).  Further, Rule 11(c)(1)'s commentary indicates that the purpose of this portion of Rule 11 is to "assure[] that the existence of guidelines will be known to a defendant before a plea of guilty."  Strict compliance with Rule 11(c)(1) in this case would have required the district court to advise appellant of a fact of which he was already aware, to-wit, that the sentencing guidelines existed.

<u>Id.</u> (emphasis added); <u>see</u> <u>United States v. Gomez-Cuevas</u>, 917 F.2d 1521, 1526 (10th Cir. 1990) ("Rule 11(c)(1) requires a court to inform the defendant of 'the

---

[10] Rule 11(h) provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."  Fed. R. Crim. P. 11(h). "A 'substantial right' amounts to knowledge of the <u>statutory</u> maximum and minimum terms applicable to the relevant charges."  <u>United States v. Ramos</u>, 923 F.2d 1346, 1357 (9th Cir. 1990) (emphasis added).

mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law," not the applicable Guidelines range. . . . Rule 11 is satisfied when a court informs the defendant of the maximum and minimum statutory sentences."); United States v. Fernandez, 877 F.2d 1138, 1143 (2d Cir. 1989) ("The statutory minimum and maximum sentences for the offense of conviction mark the boundaries within which the Guidelines sentence must fall.").[11]

In this case, the district judge elicited from Mosley at the plea proceeding that he knew about the Sentencing Guidelines and that he had discussed the effect of the Sentencing Guidelines on his sentence with his attorney. With respect to the Sentencing Guidelines, that is all that we require him to do. Cf. United States v.

---

[11] We agree with the Ninth Circuit's reasoning, which is particularly relevant to guilty pleas that occur spontaneously during trial:

> Rule 11(c)(1) requires the sentencing court to "inform the defendant . . . the mandatory minimum penalty provided by law." The Rule does not, however, require the court to discuss the minimum guideline sentence. In a practical sense, it would be impossible for a court to inform a defendant of the minimum sentence available under the Guidelines. The presentence report, which is not prepared prior to the entrance of a guilty plea, is essential to the court's formulation of the relevant sentencing factors.
>     Rule 11 only requires the mention of a minimum sentence, not the minimum guideline sentence. The minimum sentence referred to in the rule refers to the statutory minimum.

United States v. Maree, 934 F.2d 196, 200 (9th Cir. 1991) (emphasis added); see Gomez-Cuevas, 917 F.2d at 1527 (recognizing that the "statutory minimum and maximum sentences [are] readily ascertainable from the face of the applicable statute," while "the Guideline range can be affected by a variety of factors that a sentencing court cannot know before a presentence report is available"; thus, "any estimate of the Guideline range a court would provide before the presentence report is available would likely be incorrect"); United States v. Pearson, 910 F.2d 221, 223 (5th Cir. 1990) (recognizing that a sentencing court need "not explain which guidelines will be relevant before accepting a plea").

<u>Siegel</u>, 102 F.3d 477 (11th Cir. 1996) (finding plea colloquy inadequate because the defendant was not informed of the <u>statutory</u> mandatory minimum incarceration sentence). The district judge did not clearly err in not advising Mosley of his supervised release range under the Sentencing Guidelines.[12]

### III. CONCLUSION

Mosley has challenged his guilty plea because he contends the district judge violated Rule 11(c)(1) by not informing him of the interstate commerce element of his crime and his potential period of supervised release under the Sentencing Guidelines. As we have explained, the district judge sufficiently determined that Mosley understood the interstate nexus component of his sentence, and the judge was not required to state his Sentencing Guidelines range for supervised release. Finding no clear error, we AFFIRM.[13]

---

[12] Additionally, we note that Mosley's PSR, issued on October 1, 1996, stated that his crime resulted in two to three years of mandatory supervised release under the Sentencing Guidelines. Mosley, however, did not raise the fact that he was not told about supervised release under the Sentencing Guidelines in his motion to withdraw his plea filed on November 1, 1996. Moreover, neither Mosley nor his attorney objected to this aspect of his sentence at sentencing. <u>See</u> United States v. Carey, 884 F.2d 547, 549 (11th Cir. 1989) (per curiam) (finding that the failure to object at sentencing to the Sentencing Guidelines period of supervised release by the defendant or his attorney, who had been informed of this aspect of the sentence in the PSR, evidenced that no substantial right was affected and permitted affirming sentence under Rule 11(h)).

[13] Mosley also argues on appeal that the district judge erred in denying his motion to withdraw his plea under Federal Rule of Criminal Procedure 32(e) because the district judge failed to comply with Rule 11(c)(1). Mosley's motion to withdraw his plea, however, is based on his attorney's alleged ineffectiveness on other grounds and not on the district judge's failure to comply with Rule 11(c)(1). Thus, Mosley and his appellate counsel have recharacterized and limited on appeal Mosley's motion to withdraw his plea as failure of the district judge to comply with Rule 11(c)(1) in accepting Mosley's guilty plea. Because we have determined that the district judge properly conducted the plea colloquy in this case, we need not address Mosley's contention that the judge erred in denying his motion to withdraw his guilty plea on the same basis.