[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11424
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 16, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:06-cr-00217-RWS-CCH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RODNEY SHAW,
a.k.a. Poncho,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 16, 2011)

Before TJOFLAT, CARNES and FAY, Circuit Judges.

PER CURIAM:

Rodney Shaw appeals his conviction, following a guilty plea, of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(iii). He argues that the magistrate judge committed plain error by participating impermissibly in his plea discussions with the government. The government concedes the error and suggests that we instruct the district court to reassign the case on remand. For the reasons set forth below, we vacate Shaw's conviction and remand for further proceedings.

I.

In 2006, a federal grand jury indicted Shaw on three counts: (1) conspiracy to possess with intent to distribute cocaine and at least 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), (b)(1)(C), 846, 851; (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).

On September 17, 2009, Magistrate Judge Christopher Hagy convened a suppression hearing. During the hearing, defense counsel Thomas Hawker noted that the parties' "difficult" plea negotiations were not yet resolved, but they had reached a point where Shaw wanted to take a plea, so he wished to postpone the instant hearing until September 29th. The prosecutor, Matthew Jackson, stated

that the government was not ready to proceed with the suppression hearing, and he set forth the following time line of the plea negotiations. The hearing originally had been scheduled for August 24th, but counsel contacted him that day to state that Shaw was willing to enter into a binding plea. Accordingly, the court had postponed the suppression hearing to September 4th. During the last week of August, Jackson offered defense counsel a binding plea agreement for a 15-year sentence for the § 924(c) charge. Jackson noted to the court that Shaw was eligible for two § 851 enhancements on the drug charge, so if he were convicted at trial, he would face a mandatory-minimum sentence of life imprisonment.

Jackson further stated that, on August 31st, counsel informed him that Shaw would plead to the § 924(c) charge in exchange for a 15-year sentence and dismissal of the other charges. Later that day, though, Jackson was told that Shaw had changed his mind and wished to plead to 15 years' imprisonment on the drug charge, instead. Because everyone believed that a plea ultimately would be entered, the hearing was postponed again to September 17th. On September 11th, Jackson offered defense counsel a binding plea agreement for 15 years' imprisonment for the drug charge. Counsel said that Shaw would accept the plea, and that the instant suppression hearing would be unnecessary. On September 15th, Jackson sent the plea agreement to counsel. The next morning, counsel

3

informed Jackson that Shaw had changed his mind and would go forward with the suppression hearing unless the government agreed to a sentence of less than 12 years' imprisonment on one of the charges.

Jackson added that Hawker had asked that morning for a 12.5-year sentence, which the government found unacceptable. Jackson said that, if Shaw went forward with the suppression hearing, he would file the § 851 notice seeking the mandatory-minimum life sentence. He also characterized Shaw's negotiations as "games" and an attempt to "play the government," and indicated that, if Shaw did not plead by 5:00 p.m. the next day, September 18th, the government would make no further offers and would pursue both the § 851 enhancements and a possible superseding indictment containing easier-to-prove substantive drug charges.

Jackson expressed concern that Shaw would agree to take the 15-year deal, then back out on the night before the rescheduled suppression hearing. He said, "I don't know how to necessarily resolve this and hopefully Your Honor has a better idea, because I can't think of one." The following exchange then took place:

> THE COURT: Well, maybe we ought to – I mean first, he's got the right to negotiate just to find out how far he can bring you down. I think he's reached bottom at 15.
> MR. JACKSON: He has.
> THE COURT: I know with me, I'm not going to continue this thing anymore. We've got to move this thing forward and let the chips fall where they may.

4

. . . .

And I think he knows that. But you can't blame anybody for trying to negotiate. I know you are not trying to blame, but the point is we have been at it for six months. It's making the case difficult, it's backing up everybody's dockets, and it's time to fish or cut bait.

. . . .

Either take 15 years or take what you get if you are found guilty.

MR. JACKSON: I agree.

. . . .

. . . [W]hat we could do is say we need to have a plea before Judge Story on or before September . . . 29th. If it falls through, then we can have our suppression hearing . . . either later that week or the following Monday.

THE COURT: Okay.

Judge Hagy rescheduled the hearing and addressed Shaw:

All right. We will schedule it on October the 7th at 9:00 a.m. and we are going forward. No more – I don't care whether you are discussing a plea or not. We are going to go forward and get this thing moving and let the chips fall where they may.

Again, Mr. Shaw, you are entitled to negotiate. I don't hold that against you. But I've got to move the docket and we've got to let things happen. And it seems to me, you know, if you are fishing and you are testing for the bottom with a sinker, I think you've hit bottom. They are not going to go any further than that. And it sounds like they are going to ask for more if you don't go there. So that's the choice in front of you and we'll just go ahead on that basis.

So is it your intent to indicate before me today that the defendant is willing to enter a plea of guilty to the drug charge or the [§] 924(c) [charge]?

Hawker and Jackson confirmed the offer for a 15-year sentence for

conspiracy to distribute powder cocaine. Hawker stated that he and Shaw had

5

talked about the written plea agreement over the phone, had reviewed it briefly that morning, and had discussed the previous version in detail. The exchange continued:

> THE COURT: Does Mr. Shaw intend, then, to plead guilty to the charge of Count One limited to powder?
> MR. HAWKER: Limited to powder.
> THE COURT: And to a 15-year sentence?
> MR. HAWKER: That is my understanding of his intent as we sit here today.
> Is that correct?
> THE COURT: Is that your intent, Mr. Shaw?
> THE DEFENDANT: Yes.
> THE COURT: Yes?
> THE DEFENDANT: Yes, sir.
> THE COURT: Okay. Has anybody – is that voluntary? Has anybody forced you or coerced you or is this a decision you have reached after discussing it with counsel of your own free will?
> THE DEFENDANT: Well, really, Your Honor, my back is kind of against the wall, I mean.
> THE COURT: Well, I mean other than that. I know your back is against the wall. I mean you've got to know your options and they need to tell you your options. And your options would be you could get not guilty if everything went – or you could get 15 years or you could get life.
> THE DEFENDANT: That's what I'm saying.
> THE COURT: And your counsel knows what the evidence is against you and what's likely and so they could pretty much tell you what the likely result is and then you just have to make a judgment. And you have made a judgment that you would accept a 15-year sentence?
> THE DEFENDANT: Yes.
> . . . .
> THE COURT: And you are going to plead guilty on that basis; is that correct?

THE DEFENDANT: Yes.

THE COURT: All right.  Well, that would be in front of Judge Story and we'll try to get it.  I'll give him a call . . . and see if I can get him to get you on the calendar quickly.

After confirming the new date of the hearing and reviewing which motions would be addressed, Judge Hagy said,

Mr. Shaw, I know you've got not great choices, but sometimes we've got to make hard choices.  And you've had good counsel and we've been at it a long time.  So it sounds to me like a reasoned decision and one that's supported by common sense and judgment and so the record reflects the guilty plea will have to be redone in front of Judge Story.

Later that day, the parties appeared before District Judge Richard Story for a change-of-plea hearing.  During the colloquy, Judge Story asked, "Aside from the plea agreement, has anyone threatened or forced you to plead guilty or told you that if you do not plead guilty, further charges are going to be brought against you or any other adverse action taken against you?"  Shaw replied, "No, other than I'm going to get a life sentence if I go to trial and be found guilty.  I mean, that right there is about the only thing really pressuring me into taking this plea today."  Judge Story said, "I understand.  You've looked at what the potential possibilities are if you went to trial and were convicted, the sentence you might face; and that's what's caused you to decide to accept this agreement.  Is that fair?"  Shaw answered, "That's part of it, yeah, uh-huh."  He indicated that, otherwise, no

threats had been made against him.

During a discussion about the possibility of credit for time served, Shaw said to the court:

> What I was saying is that, you know, I've been locked up for three years for something that I didn't do, a crime that I didn't commit. And it's been a hard three years on me.
> Mr. Jackson was – stated to Judge Hagy that I was playing the games about taking a plea. It's never been that. It's that . . . if you give me 15 years, then, okay, I'll take the 15 years. But if you're not giving me [credit] for the [time] I've been locked up, it's like I'm getting 18 years.

The court stated that it would review the matter before sentencing. After Jackson recited the factual basis for the plea, Shaw stated that he admitted to possessing powder cocaine that he planned to distribute, but not that he conspired with others. Judge Story reiterated that Shaw was charged with a conspiracy, which required him to have been working with someone else in possessing the cocaine with intent to distribute. Shaw then confirmed that he worked with others in order to accomplish the cocaine possession. During discussion of the sentence appeal waiver in the plea agreement, Jackson reiterated that the plea agreement would be void and the parties would "go back to square one" if Shaw were to receive other than a 15-year sentence.

Judge Story accepted Shaw's plea and adjudged him guilty. At the

sentencing hearing in February 2010, he stated that his intention was to impose a 180-month sentence, but because Shaw had already been detained for 40 months, he ordered Shaw to serve 140 months' imprisonment with no additional credit for time served. Judge Story further indicated that he had received several communications from Shaw over the previous few months in which Shaw expressed reservations about the plea. He asked whether Shaw wanted to raise any of those concerns before the sentence was imposed, but Shaw said that he did not. Accordingly, the court imposed the sentence.

## II.

Where, as here, the defendant did not raise any objections related to his guilty plea, we review for plain error. *See United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999). A guilty plea must be free from coercion. Fed.R.Crim.P. 11(b)(2). Accordingly, while the government and the defense may discuss and reach a plea agreement, "[t]he court must not participate in these discussions." Rule 11(c)(1). Rule 11(c)(1) is "an absolute prohibition on all forms of judicial participation in or interference with the plea negotiation process." *United States v. Corbitt*, 996 F.2d 1132, 1134 (11th Cir. 1993) (discussing the former Rule 11(e)(1), which was renumbered in 2002 without relevant textual changes). Judicial participation in plea discussions is plain error, and a defendant who has

9

pled guilty after a judge participated in the discussions should be allowed to replead without showing actual prejudice. *Id.* Even where "it is clear that the . . . judge . . . was motivated primarily by the concern that [the defendant] be thoroughly apprised of the situation that he faced, Rule 11[(c)(1)] requires that this concern, however well-intentioned, be addressed by someone other than the judge." *United States v. Casallas*, 59 F.3d 1173, 1178 (11th Cir. 1995). Where the judge does "nothing flagrant," but merely indicates that the defendant is likely to receive a heavy sentence and should think carefully about the prosecution's offer, the comments still violate Rule 11(c)(1) and the conviction must be reversed. *Corbitt*, 996 F.2d at 1135.

Here, Judge Hagy explicitly told Shaw that he had to choose between the government's 15-year offer and the possibility of a life sentence. He also emphasized the government's suggestion that additional charges would be brought against Shaw if Shaw refused the offer. He told the parties that he would not accept any further delays in the proceedings, he asked whether Shaw would commit at that time to entering a guilty plea, and he offered to call Judge Story in order to expedite the change-of-plea hearing. Shaw agreed to plead on the ground that his "back [was] against the wall." Furthermore, when he pled guilty before Judge Story a few hours later, he made comments suggesting that his decision was

directly influenced by the events in Judge Hagy's courtroom, and he appears to have contacted Judge Story between the change-of-plea hearing and the sentencing hearing expressing reservations about the plea. Judge Hagy's comments plainly were improper, and, thus, Shaw's conviction must be vacated. *Corbitt*, 996 F.2d at 1135.

A case such as this requires reassignment to another judge on remand, even if there is no evidence that the judge is vindictive or biased. *Id.* Accordingly, we instruct the district court to reassign Shaw's case to different district and magistrate judges on remand. In doing so, we do not suggest that Judge Hagy's comments were other than well-intentioned, and we have no reason to believe that Judge Story was aware of the events that took place in Judge Hagy's courtroom. Reassignment of the case is merely intended to "extend the prophylactic scheme," ensure a clean proceeding, and avoid any possible misimpression created by the judges' continued participation in the case. *See id.*

For the foregoing reasons, we vacate Shaw's conviction and remand for further proceedings, with instructions to reassign the case to different magistrate and district judges on remand.

**VACATED AND REMANDED WITH INSTRUCTIONS.**