[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12132
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cr-00182-RAL-TGW-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL JOSEPH ARMANO,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 30, 2018)

Before JILL PRYOR, HULL and JULIE CARNES, Circuit Judges.

PER CURIAM:

Pursuant to a plea agreement, Michael Armano pled guilty to one count of enticing a minor to engage in a sexual act and one count of possessing child pornography. The district court accepted Armano's plea and sentenced him to 360 months of imprisonment on the enticement count and 120 months on the possession count, to run concurrently, followed by a lifetime term of supervised release. On appeal, Armano argues that his conviction and sentence should be overturned for two reasons. First, he argues the government breached the plea agreement by failing to file a motion to reduce Armano's sentence based on the substantial assistance he provided to the government. Second, he argues the plea agreement is invalid because Armano was unaware that the agreement's factual proffer could be used to enhance his sentence. After careful review, we affirm.

## I.    BACKGROUND

### A.    Written Plea Agreement

A federal grand jury charged Armano with one count of enticement of a minor to engage in a sexual act, in violation of 18 U.S.C. § 2422(b) ("Count 1"); one count of enticement of a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction, in violation of 18 U.S.C. § 2251(a), (e) ("Count 2"); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2) ("Count 3"). Pursuant to a written plea agreement, Armano pled guilty to Counts 1 and 3. Through the agreement, Armano admitted

2

to certain facts, including that he had "targeted at least 60 children online."  Doc. 40 at 24.[1]

The agreement included a "Substantial Assistance" provision, which stated that Armano would cooperate with the government in investigating and prosecuting other individuals and testify in other proceedings.  It provided that "[i]f the cooperation [was] completed prior to sentencing," the government would "consider whether such cooperation qualifie[d] as 'substantial assistance' in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion . . . pursuant to [United States Sentencing Guidelines] § 5K1.1[] or . . . 18 U.S.C. § 3553(e)."  *Id.* at 6-7.[2]  The agreement made clear that "the determination as to whether 'substantial assistance' has been provided" and whether the government would file a corresponding motion "rests solely with [the government]."  *Id.* at 7.

The agreement also set forth the penalties applicable to Armano's offenses. It stated that Armano faced a statutory maximum penalty of life in prison on the child enticement count and a statutory maximum penalty of 10 years in prison on

---

[1] Citations to "Doc. #" refer to the district court docket in this case.

[2] Section 5K1.1 of the Sentencing Guidelines allows the district court to sentence a defendant who has provided substantial assistance below the minimum sentence required by the guidelines.  Title 18 Section 3553(e) of the United States Code states that "[u]pon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."

the possession of child pornography count, and that the court could impose the statutory maximum. The agreement provided that Armano "expressly waive[d]" the right to appeal his sentence on any ground. *Id.* at 21. Through the agreement, Armano stated that he was pleading guilty freely and voluntarily and without "threats, force, intimidation, or coercion of any kind." *Id.* at 22. He acknowledged the charged offenses and the applicable penalties and agreed that he was satisfied with the representation and advice he had received from his attorney.

## B.    Plea Hearing

At the plea hearing, Armano pled guilty to Counts 1 and 3. During the hearing, the district court placed Armano under oath and confirmed that he had an opportunity to meet with his attorney and discuss the case with her. Armano testified that he had a bachelor's degree, understood English, had never been treated for a mental illness, and was able to think clearly. He stated that he understood he was pleading guilty and confirmed that he had signed the written plea agreement after reviewing "each and every provision" with his attorney. Doc. 70 at 8. He testified that he understood the agreement and did not have questions about it.

The district court specifically discussed with Armano the Substantial Assistance provision to ensure that Armano was "absolutely clear on what the government is agreeing to do." *Id.* at 11. The district court explained that "[t]he

4

government is not saying that if you cooperate with them . . . they will in fact . . . file a motion for a downward departure." *Id.* Instead, the district court explained, the government agreed only that it would "evaluate in good faith whether any information or assistance you provide them qualifies as substantial assistance." *Id.* at 12. Armano confirmed that he understood. The district court continued:

> If you cooperate with the government and, when we come to sentencing . . . the government declines to file [the substantial assistance] motion, there's only one very limited circumstance that would allow me to intervene on your behalf and that is if you could make a substantial showing to me that the reason they didn't file the motion was based on what we call an unconstitutional motive . . . . It's a very heavy burden and unless you can prove that to me . . . the decision whether to file that motion rests with [the government].

*Id.* Armano again confirmed that he understood. The district court asked the government if Armano had been cooperating, and the government responded that he had.

The district court then sought to confirm that Armano knew he was waiving his right to appeal his sentence on most grounds, including on the basis of an error in calculating the sentencing guidelines range. The district court noted that "in these sex-related cases . . . there are all kinds of upward adjustments under the Guidelines." *Id.* at 15. The district court confirmed with Armano that he had discussed those adjustments with his attorney and that he knew he was waiving his right to appeal any determination that he qualified for such an adjustment. Armano also confirmed that he and his attorney had discussed the guidelines and how they

5

might affect his case.  The district court told Armano that the court's calculation of his guidelines range "[would] control" even if it differ[ed] from any estimate his attorney had provided him, and that he could not withdraw his guilty plea if his attorney's estimate turned out to be incorrect.  *Id.* at 22.

After Armano stated that he wished to plead guilty to Counts 1 and 3, the district court confirmed that Armano had understood the proceeding, answered all of the court's questions completely and truthfully, and did not need to confer with his attorney any further.  The district court found that Armano had pleaded guilty freely, voluntarily, and intelligently.  The court accepted Armano's plea and adjudged him guilty.

## C.    Sentencing Hearing

Prior to sentencing, in the Presentence Investigation Report ("PSI"), the probation officer recommended a guidelines range of life in prison.  That recommendation was based, in part, on the fact that Armano's plea agreement included stipulations to targeting at least 60 victims, which resulted in the creation of numerous "pseudo counts."  *See* U.S.S.G. § 1B1.2(c) ("A plea agreement . . . containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s).").  At sentencing, Armano objected to the proposed guidelines calculations on several grounds, including the creation of

6

pseudo counts, arguing that the plea agreement's reference to 60 victims should not serve as the basis for additional counts.  The district court overruled those objections and adopted the PSI.

The government recommended a sentence of life in prison.  The prosecutor argued that Armano was "obsessed with sexually exploiting kids" and that he "[could not] stop himself even if he may want to."  Doc. 67 at 151.  The government argued that Armano was likely to be a recidivist because he "could not control himself . . . [a] fact that's impossible to deny."  *Id.* at 179.  The district court told the prosecutor to "[q]uit the histrionics" and "take it easy."  *Id.* at 180.  After hearing argument from Armano, the district court varied downward by one offense level, sentencing Armano to 360 months of imprisonment on Count 1 and 120 months of imprisonment on Count 3, to be served concurrently, followed by a lifetime term of supervised release.  This is Armano's appeal.

## II.    STANDARDS OF REVIEW

This Court ordinarily reviews *de novo* whether the government has breached a plea agreement and whether a plea was made voluntarily.  *United States v. De La Garza*, 516 F.3d 1266, 1269 (11th Cir. 2008) (breach of a plea agreement); *United States v. Bushert*, 997 F.2d 1343, 1352 (11th Cir. 1993) (voluntariness of a guilty plea).  If the defendant fails to raise either of these issues before the district court, however, we review for plain error.  *De La Garza*, 516 F.3d at 1269; *United States*

7

*v. Moriarty*, 429 F.3d 1012, 1018 (11th Cir. 2005).  Under plain error review, there must be (1) an error, (2) that is plain, (3) that affects the defendant's substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *United States v. Olano*, 507 U.S. 725, 732 (1993).

## III.    DISCUSSION

### A.    The Government's Alleged Breach of the Plea Agreement

Armano argues that the government breached its agreement by failing to file a motion for substantial assistance under U.S.S.G. § 5K1.1.  Because Armano failed to make this argument in the district court, we review it for plain error.  When a guilty plea rests "in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Santobello v. New York*, 404 U.S. 257, 262 (1971).  To determine whether the government has breached a plea agreement, "we must first determine the scope of the government's promises."  *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004).

The government promised Armano that it would "consider" whether his assistance qualified as substantial assistance under its policies and whether it would introduce a motion to that effect.  Doc. 40 at 6.  The plea agreement specifically stated that the decision as to whether the government would introduce a substantial assistance motion to reduce Armano's sentence "rest[ed] solely with

the [government]." *Id.* at 7.  And as the district court explained to Armano at the plea hearing, the government agreed only to "evaluate in good faith whether any information or assistance . . . qualifie[d] as substantial assistance."  Doc. 70 at 12. Even assuming that Armano fully cooperated with the government, therefore, the government never agreed to introduce a substantial assistance motion and did not breach the plea agreement by failing to do so.

Armano argues that the government breached the plea agreement by failing to evaluate "in good faith" whether he had provided substantial assistance.  He points to the prosecutor's statements during sentencing that Armano was "obsessed" with child pornography and that he could not stop himself from committing another offense, arguing that these comments show that the government never intended to offer the substantial assistance motion.  We disagree with Armano that these statements—which were made without reference to Armano's assistance—show that the government failed to evaluate his assistance in good faith.  And, in any event, because Armano failed to raise this argument during sentencing, the district court did not plainly err by failing to consider *sua sponte* whether the plea agreement had been breached on that basis.  *See United States v. Forney*, 9 F.3d 1492, 1500 (11th Cir. 1993) (explaining the defendant's "attempt to allege bad faith by the government for not making a [§] 5K1.1 motion

9

[was] unavailing because he did not raise this objection with the district court at the sentencing proceeding").

Armano further argues that his conviction and sentence should be overturned because the government was motivated by an unconstitutional factor in declining to make a substantial assistance motion. Although, in general, introducing a substantial assistance motion is a matter of prosecutorial discretion, that discretion "is subject to constitutional limitations that district courts can enforce." *Wade v. United States*, 504 U.S. 181, 185 (1992). A prosecutor may not, for example, decide against introducing a substantial assistance motion because of factors such as "the defendant's race or religion." *Id.* at 186. But as the Supreme Court has explained, a defendant arguing that a prosecutor had an unconstitutional motivation must make some showing beyond mere "generalized allegations of improper motive." *Id.*

Armano makes only generalized allegations here. He argues that the prosecutor's comments about his obsession with child pornography were improper, but he does not explain how those comments relate to an unconstitutional motivation, like his race or his religion. Further, the prosecutor's statements suggesting that Armano would commit another offense related to child pornography pertained to the factors the district court must consider during sentencing, including the need for the sentence to deter criminal conduct and

10

protect the public from further crimes.  *See* 18 U.S.C. § 3553(a)(1)-(2).  We thus reject Armano's argument that the prosecutor's comments showed that the government was unconstitutionally motivated in deciding not to introduce a substantial assistance motion.  Because Armano has identified no error with respect to the government's decision against introducing a substantial assistance motion, we need not discuss the remaining prongs of the plain error test.[3]

## B.   The Knowing and Voluntary Nature of Armano's Guilty Plea

Armano argues that his conviction was not knowing or voluntary because he was unaware that the facts he admitted in the plea agreement could be used to enhance his sentence.  Because Armano failed to make this argument during sentencing, we review it for plain error.  "A guilty plea involves the waiver of a number of a defendant's constitutional rights, and must therefore be made knowingly and voluntarily to satisfy the requirements of due process."  *Moriarty*, 429 F.3d at 1019.  This Court has recognized three "core principles" as necessary to a knowing and voluntary plea.  *United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999) (internal quotation marks omitted).  The defendant must (1) enter his guilty plea free from coercion, (2) understand the nature of the charges, and (3)

---

[3] Armano argues that we should review his argument *de novo*, rather than for plain error, but because he identifies no error, the standard of review makes no difference to the outcome of his appeal.

understand the consequences of his plea. *Id.* The district court addressed each of these core concerns in accepting Armano's plea.

First, the district court ensured that Armano's plea was not coerced. Armano testified that he had not been induced by any promises or assurances other than those contained in the plea agreement, and he stated that no one had made any claims about the sentence the district court would impose on him. He also confirmed that he had not been threatened or coerced into pleading guilty. Armano agreed that he was pleading guilty only "because it's what [he] want[ed] to do and for no other reason." Doc. 70 at 31.

Second, the district court ensured that Armano understood the nature of the charges against him. We have held that "there is no one mechanical way" that a district judge must advise a defendant of the charges to which he is pleading guilty. *Mosley*, 173 F.3d at 1322 (internal quotation marks omitted). Instead, we assess each plea colloquy "individually based on various factors, such as the simplicity or complexity of the charges and the defendant's sophistication and intelligence." *Id.* at 1322-23 (internal quotation marks omitted). Here, the district court confirmed that Armano could read, write, and speak English; that he had a college education; that he understood the proceeding; and that he was not under the influence of drugs or any other substance. The district court also listed the elements of each offense the government would have to prove beyond a reasonable doubt if Armano were to

12

proceed to trial.  Armano testified that he had reviewed the indictment and the plea agreement, and that he understood the specific factual circumstances underlying the offenses.

Third, the district court ensured that Armano understood the consequences of his plea.  "To ensure compliance with this third core concern, [Federal Rule of Criminal Procedure] 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea." *Moriarty*, 429 F.3d at 1019.  Relevant here, the district court must inform the defendant of any maximum possible penalty and it must ensure the defendant understands that the district court has an obligation to calculate and consider the applicable guidelines range, to consider any possible departures under the guidelines, and to consider the sentencing factors in 18 U.S.C. § 3553(a).  Fed. R. Crim. P. 11(b)(1)(M).  Here, the district court informed Armano of the statutory maximum penalties applicable to Counts 1 and 3.  The district court also ensured that Armano had discussed possible sentencing enhancements with his attorney, noting that "in these sex-related cases . . . there are all kinds of upward adjustments under the Guidelines."  Doc. 70 at 15.  The district court also told Armano that its calculation of the guidelines range would "[would] control" even if it were different than the estimate his attorney had provided him.  *Id.* at 22.

13

According to Armano, the district court should have explained to him that the statement contained in the plea agreement that he had "targeted at least 60 children online" could be used to enhance his sentence. Doc. 40 at 24. But Rule 11 "does not require the court to specify which guidelines will be important or which grounds for departure might prove to be significant." *United States v. Bozza*, 132 F.3d 659, 661-62 (11th Cir. 1998) (internal quotation marks omitted) (discussing Rule 11(c)(1)). Instead, where the district court confirms "at the plea proceeding that [the defendant] knew about the Sentencing Guidelines and that he had discussed the effect of the Sentencing Guidelines on his sentence with his attorney," the plea is knowing and voluntary. *Mosley*, 173 F.3d at 1328. "With respect to the Sentencing Guidelines, that is all we require the district judge to do." *Id.* We thus disagree with Armano that the district court should have rejected his plea because it was unknowing and involuntary. Because Armano has identified no error related to the district court's acceptance of his guilty plea, we need not address the rest of the plain error test.[4]

---

[4] We decline to consider on direct appeal Armano's argument that his attorney's performance was deficient. *See United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002) ("We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record."). Because there is no factual record pertaining to whether Armano's attorney was ineffective, that claim would be better addressed in a 28 U.S.C. § 2255 motion. *See United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010) ("[T]he preferred means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion even if the record contains some indication of deficiencies in counsel's performance." (internal quotation marks omitted)).

## IV.    CONCLUSION

For these reasons, we affirm Armano's conviction and sentence.

**AFFIRMED.**