[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10552

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ELVIN JOEL AGUILERA RAUDALES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20035-FAM-1

_____

Before ROSENBAUM, BRANCH, and ABUDU, Circuit Judges.

PER CURIAM:

Elvin Aguilera Raudales appeals his conviction for attempted sex trafficking of a minor following his guilty plea. He maintains that his plea was not knowing and voluntary because he did not understand the consequences of his plea and he was coerced by the district court into entering it despite his belief that he was entrapped. After review, we conclude that his plea was knowing and voluntary. Accordingly, we affirm.

## I.    Background

Raudales was charged by superseding information with attempted sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and 1594(a).[1] He entered into a written plea agreement in which he agreed to plead guilty to that charge.[2]

---

[1] Raudales waived his right to be prosecuted by indictment and consented to prosecution by information.

[2] The plea agreement contained a sentence-appeal waiver in which Raudales "waive[d]" his ability: (1) "to appeal any sentence imposed . . . or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted my statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishe[d] at sentencing"; and (2) "to assert any claim that [(A)] the statute(s) to which [he pleaded] guilty is/are unconstitutional; and/or [(B)] the admitted conduct does not fall within the scope of the statute(s) of conviction." Raudales argues that the sentence-appeal waiver in his plea agreement should not be enforced because it was not knowingly and voluntarily entered. We do not reach this issue because a sentence-appeal waiver does not bar a

23-10552                Opinion of the Court                3

Raudales signed the plea agreement and a factual proffer. He admitted as part of the factual proffer that he had visited a website advertising prostitution services and observed an ad "of what appeared to depict two young females with their faces covered by emojis." Raudales texted the number listed on the ad. Unbeknownst to Raudales, an undercover officer monitored and operated the ad and phone number. The undercover officer told Raudales "they had two minor girls, who were 12 and 14 years old, available for various sex acts in exchange for money." Raudales "negotiated and agreed to pay $150 to have sexual intercourse with the 12-year-old minor girl during a 30-minute 'date'" at a hotel. Raudales then went to the specified hotel and paid a second undercover officer the agreed upon sum and was arrested.

At the change-of-plea hearing, Raudales stated that he had a sixth-grade education and that he could read and write in Spanish.[3] He confirmed the accuracy of the factual proffer and his intent to plead guilty. The district court then explained that by pleading guilty, Raudales was giving up his right to a trial, the right to present witnesses, the right to require the government to prove its case, and Raudales's ability to "fight the case" and maintain his innocence. Raudales confirmed that he understood. The district

---

challenge to the validity of the guilty plea itself, *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015), and Raudales does not seek to raise any other claims that would implicate the waiver.

[3] Raudales had a Spanish interpreter at the change-of-plea hearing. Raudales's interpreter also signed the plea agreement, confirming that she had interpreted it for Raudales.

court explained that Raudales faced a minimum-mandatory sentence of 10 years' imprisonment with a statutory maximum of life imprisonment, and Raudales confirmed multiple times that he understood.  The district court explained that because Raudales was a Honduran national and citizen, he would be deported after the completion of his sentence and he would not be able to reenter the United States for any reason, and Raudales stated that he understood.  Raudales confirmed that it was his signature on the plea agreement.  The district court then explained that, under the agreement, Raudales gave up his right to appeal unless the court sentenced him to more than 10 years' imprisonment, and Raudales stated that he understood.  Raudales confirmed that he was happy with his counsel and denied needing any additional time to discuss the plea with his counsel.  When asked whether anyone had promised Raudales anything in exchange for his plea, he answered, "No."

Raudales then stated that he was pleading guilty.  The district court stated "[s]ometimes in cases defendants have defenses such as, I didn't know how old they were or I was entrapped or I was forced to do it.  Does that apply to you?  Were you entrapped?" Raudales responded, "Yes.  I was entrapped there because I entered a website that was for adults."  Raudales's attorney then offered to explain Raudales's position stating, "in [Raudales's] mind, he entered an adult website and then he saw this ad, but he definitely—the ad was very explicit and we've discussed it at length, what the ad said.  So . . ." (ellipsis in original).  The district court then asked Raudales whether he knew the age of the girl he

planned to have sex with, and Raudales confirmed that he did and that the girl was 12 years old. The district court clarified "[s]o even though you went to an adult sex prostitution Web page, at some point you knew that you were going to pay $150 to have sex with a 12-year-old[?]" Raudales stated "Yes." The district court then asked Raudales "[s]o you were entrapped by someone who was older," and Raudales answered, "Yes." After an off the record discussion between Raudales and his counsel, his counsel stated "the [undercover] officer made it very clear that the child was either 12 or 14."

The district court then requested additional details from the prosecution about the conversations between Raudales and the undercover officer, and it instructed Raudales to state whether he agreed or disagreed with the statements. The following colloquy occurred:

> [The Government]: Yes, Your Honor. The defendant responded to an online advertisement. He texted a number that claimed that they had two young females who were available for sex. Upon the defendant initially responding to that advertisement number, an undercover officer proceeded to engage in communications with the defendant.
>
> Immediately upon the start of these communications, the undercover officer indicated that the two girls available were 12 and they were 14 years old. The defendant himself selected the 12-year-old girl to have sex with upon seeing various photos of them. Those photos included photos of

actually adult [confidential informants] with their faces regressed to look like children.

Later on, the defendant actually got on to a recorded undercover call with a different undercover officer. Again, it was reiterated to the defendant that the girl he would be meeting with for sex was 12 years old. The defendant at that time indicated, well, if she treats me good, maybe I'll see her another time that weekend.  The defendant later on showed up to—

The Court:  Slow down just a little bit.

[The Government]: Sure, Judge.

The defendant later on showed up to a hotel . . . . Again, the undercover officer who he was meeting with reiterated for potentially the fifth time that the girl . . . . he would be meeting with was 12 years old.

The defendant reconfirmed the entire agreement that they had negotiated for the commercial sex act.  He provided money in the exact amount for the agreement that they had negotiated, and at no point throughout the entire course of the communications did the defendant express any hesitation for the fact that the minor girl was 12 years old.

The Court: Do you agree with everything the prosecutor has stated, that these two officers had these exchanges with you of words? Do you agree or not?

[Raudales]: Yes.

The district court then explained, in basic terms, that entrapment does not exist "when a defendant is willing to break the law and the Government merely provides what appears to be a favorable opportunity for the defendant to commit a crime." Thus, the court explained that "[i]f [Raudales] had a previous intent to commit sex trafficking with a minor, then there's no entrapment. If [he] had no previous intent and the Government persuaded [him], there would be entrapment." Raudales stated that he understood the explanation. When asked specifically as to whether he had "a previous intent to commit sex trafficking with a minor, exchange money to have sex with a 12-year-old," Raudales confirmed that he did. He also confirmed that he was pleading guilty. Accordingly, the district court found his guilty plea knowing and voluntary and accepted his plea. The district court subsequently sentenced Raudales to 10 years' imprisonment to be followed by a life term of supervised release. This appeal followed.

## II.    Discussion

Raudales argues that his plea was not knowingly and voluntarily entered because the record demonstrates a lack of understanding of the consequences of his plea and coercion by the district court.

"When, as here, a defendant argues for the first time on appeal that his guilty plea was constitutionally invalid because it was not knowing and voluntary, we review only for plain error,

using a four-prong inquiry."[4]  *United States v. Roosevelt Coates*, 8 F.4th 1228, 1235 (11th Cir. 2021); *see also United States v. Moriarty*, 429 F.3d 1012, 1018 & n.2 (11th Cir. 2005) (explaining that where a defendant fails to file a motion to withdraw his plea or otherwise raise his objections to the district court, we review the challenge to the plea for plain error).  "To establish plain error, a defendant must show that (1) there was an error, (2) the error was plain, and (3) the error affects [his] substantial rights."  *Roosevelt Coates*, 8 F.4th at 1235.  Provided that these conditions are met, we may then exercise our "discretion to recognize an unpreserved error but only if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  *Id.* (quotation omitted).

Under plain error review, the defendant bears the burden of persuasion.  *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003).  Thus, "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that,

---

[4] Raudales states in his initial brief that his claim is subject to *de novo* review without supporting explanations as to how he preserved this issue or supporting authority.  The government in turn argues that his claim is subject to plain error review.  We agree with the government.  Although his potential entrapment defense was discussed at length, Raudales—seemingly satisfied with the discussion—went on to plead guilty.  At no point in the district court proceedings did Raudales challenge the validity of his plea or raise any objections on that basis.  Thus, plain error review applies. *United States v. Roosevelt Coates*, 8 F.4th 1228, 1235 (11th Cir. 2021).

but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

For a plea to be knowing and voluntary, the district court must comply with Federal Rule of Criminal Procedure 11, and, in particular, address three "core principles" by ensuring that: "(1) the guilty plea must be free from coercion; (2) the defendant understands the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999) (quotation marks omitted). We apply a "strong presumption" that statements made by a defendant during his plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

Raudales failed to show that the district court committed plain error in accepting his guilty plea. The district court ensured that Raudales understood the nature of the charge against him, the factual basis of the charge, the rights he was giving up by pleading guilty—including his right to "fight the case" and maintain his innocence—and the consequences of his plea. At each point, Raudales indicated that he understood. The district court also informed Raudales of the applicable minimum and maximum penalties, and that, per the terms of the appeal waiver, he could not appeal unless his sentence exceeded 10 years' imprisonment. The district court explained that "the only thing" Raudales could appeal was his sentence if he received more than 10 years. Raudales again stated that he understood each of these aspects. Thus, a review of the record confirms that the plea colloquy was thorough, complied

with the requirements of Rule 11, and addressed the three core principles for a knowing and voluntary plea. *Mosley*, 173 F.3d at 1322.

Further, Raudales's argument that the district court coerced him into giving up his entrapment defense and pleading guilty is belied by the record. When Raudales indicated suddenly during the plea colloquy that he might have an entrapment defense, the district court attempted to flesh out Raudales's exact argument by asking him questions regarding his offense conduct and who he believed entrapped him. The court then explained the law of entrapment to Raudales in basic terms and informed him that to be entrapped he had to have lacked the previous intent to commit the offense. Raudales stated that he understood the court's explanation of entrapment. Raudales then responded, "Yes" when asked if he had the intent to commit sex trafficking with a minor, and he again answered affirmatively when asked if sex trafficking with a minor was the offense to which he was pleading guilty. Thus, the district court did not coerce Raudales into pleading guilty. Instead, the district court simply conducted an inquiry into Raudales's entrapment concern in order to ensure that the plea was knowing and voluntary. During the colloquy, Raudales had numerous opportunities to maintain his innocence and persist with an entrapment defense, but he did not do so. Accordingly, finding no plain error occurred, we affirm.

**AFFIRMED.**